Lyday *vs.* Douple, *et al.*

(Decided May 28th, 1861.)

---

# HENRY LYDAY *vs.* JOHN DOUPLE, and others.

Where a party fails to avail himself of his proper defence at law, and was not prevented from so doing by fraud or accident, or the acts of the opposite party, unmixed with any negligence or fault on his part, equity will not interfere.

This doctrine is peculiarly applicable to judgments of the circuit courts upon appeals from judgments of justices of the peace, where the appellate court has power to determine the cases according to the law, and the *equity,* and the right of the matter, and whose decisions are *final.*

APPEAL from the Equity side of the Circuit Court for Washington county.

The bill in this case was filed on the 24th of December 1857, by the appellant against the appellees, for an injunction, to restrain execution upon judgments of condemnation,

obtained by the defendants against the complainant, as garnishee of Frederick Unger, in the circuit court for that county, on appeals from a justice of the peace. The injunction was granted, and upon motion to dissolve the case was heard upon bill, answers, exhibits, and an agreed statement of facts, in substance as follows:

In December 1854, Frederick Unger conveyed all his real estate to Adam Shank, in trust, for his creditors, in which conveyance his wife, Elizabeth, did not join. Afterwards, Shank, the trustee, sold this real estate to Lyday, the complainant, who, being anxious to disencumber the estate of Mrs. Unger's contingent right of dower, purchased of her said right for $500, and she and her husband made to Lyday a deed to extinguish the same. Of this purchase money $300 was paid in hand, and for the residue Lyday executed his two promissory notes for $100 each, *payable to the said Elizabeth Unger or order,* dated February 24th, 1854. The defendants being creditors of Frederick Unger, obtained judgments against him before a justice of the peace, and issued attachment thereon, and laid them in the hands of Lyday, seeking condemnation of the money mentioned in these notes executed to Mrs. Unger. Upon the return of the attachments the justice refused to render judgments of condemnation. Whereupon appeals were taken to the circuit court for Washington county, where the cases were regularly tried upon the facts above set forth, and judgments of condemnation rendered in all the cases; on the 1st of December 1855, the court (PERRY, J.) in rendering these judgments of condemnation, said:

"In these cases I have determined that the decisions of the justice below were wrong, and the judgments should be reversed. The debt which has been attached was evidenced by notes, made payable to the wife of the defendant in the attachment. Such being the case, it is insisted that the debt is due to the wife and is exempted from the attachment. Several Acts of Assembly have been referred to on the part of the defendant to show, that the husband has no interest in the debt. The Act of 1853, ch. 245, has been mainly re-

lied on, which provides: "That all property which she may acquire or receive after her marriage, by purchase, gift, grant, devise, or in a course of distribution, shall be protected from the debts of the husband," &c. I cannot see in this Act any thing to authorise the court to disregard the principles of the common law. The cases of *Peacock vs. Pembroke*, 4 *Md. Rep.*, 280, and *Turton vs. Turton*, 6 *Md. Rep.*, 375, are conclusive upon the question. They establish beyond doubt that personal property accruing to the wife during coverture, vests in the husband, and is liable to attachment by the husband's creditors to satisfy debts due by him. It is true that if the debt had accrued to her by any of the modes pointed out by the Acts of Assembly, then it would not be liable. Regarding the law as different and in favor of the attaching creditors, I will direct judgments of condemnation to be entered."

Subsequently, Lyday made motions to strike out these judgments of condemnation, which motions were overruled by the court on the 19th of December 1857. Lyday was then sued on these two notes by Unger & wife, and judgment rendered against him, by confession, for the full amount thereof, at the July term 1858, of the circuit court for Washington county.

At the hearing of the motion to dissolve, the court (PERRY, J.) on the 28th of November 1859, delivered the following opinion:

"The questions to be decided by me in this case are, whether the judgments of the court, rendered in the appeal cases, can be enjoined, because, as is contended, the law by which the court is supposed to have been governed in those appeals, has since been announced in the Court of Appeals to be different, (9 *Md. Rep.*, 552, *Unger & Wife vs. Price*,) and admitting the circuit court to have been in error in respect to the principles which should determine the rights of the parties, will a court of equity, for that reason, interfere and prohibit executions on the judgments?

"There has been much difficulty with me in reconciling the apparent conflict between the case of *Unger & Wife vs.*

Lyday *vs.* Douple, *et al.*

*Price,* and the case of *Taggart vs. Boldin, et al.,* 10 *Md. Rep.,* 105. In the former, his honor Judge Mason, has established the law to be, that since the Act of 1853, ch. 245, personal property purchased by a *feme covert* in her own name and for her own use, with money she received from the sale of her potential right of dower in her husband's real estate, cannot be taken for the debts of her husband. In the case of *Taggart vs. Boldin, et al.,* Chief Justice Le Grand announced the law to be, that as soon as a purchaser passes his notes to the wife for the purchase money of the land, the mutation from real to personal estate was complete, and the right of the husband to sue for their recovery, in his own name, perfect, and they could, therefore, be reached by his creditors. In the case of *Unger & Wife vs. Price,* the purchase money was paid to the wife, and the evidence tended further to show that with the money thus acquired, the wife purchased the property in controversy, in her own name and for her own use. In the case of *Taggart vs. Boldin, et al.,* the Chief Justice reviews the former decisions of *Peacock vs. Pembroke,* 4 *Md. Rep.,* 280, and *Turton vs. Turton,* 6 *Md. Rep.,* 375, with undoubted approbation. In the case of *Unger & Wife vs. Price,* the property was purchased by the wife in her own name, and the evidence tended to show it was purchased for her own use. The acquisition of the property for her sole and separate use was sufficient to protect it against the creditors. It is not determined that she acquired it by purchase, gift, grant, devise, bequest, or in course of distribution, because the Act of 1853, (as decided in that case,) independent of the law, authorises the wife to hold property purchased for her, and for her separate use. But is there any evidence in this cause, other than the fact that the notes are made payable to the wife, that she was to hold the notes to her sole and separate use? and when the Court of Appeals, in the cases to which I have adverted, have determined that a note payable to a wife, is not such as to divest the husband of his right to sue and recover the amount due upon it, and that creditors could attach, all difficulty is removed from my mind. The right of the wife in

Lyday vs. Douple, et al.

this cause, could not arise from the provisions of the Act of 1853, and she cannot, in any sense, be esteemed as having acquired these notes by purchase, gift, grant, devise, bequest, or in course of distribution, and, therefore, the court must decide the question upon principles of law, independent of, and wholly unaided by that Act, and as I have already shown by decisions of an undoubted import, that a note given, payable to a married woman, does not give her a separate estate, and that the money due on such note can be attached for the debts of the husband, I feel myself so surrounded by legal principles that I cannot escape the conclusion to which I have arrived.

"But admit that there was error in the circuit court, in reversing the judgments appealed from, should this tribunal for that reason give the relief prayed for? It would be certainly very gratifying to the judge that no action of his court should operate injuriously to individual debtors, but if for wise and prudential purposes, it has been determined such should not be done, this court must adhere to such a determination. In 2 *Story's Eq.*, sec., 897, the author states the rule to be, that relief will not be given to a party by an injunction of a judgment or other proceeding at law, because a question of law has been erroneously decided by a court of law. It is not necessary for me to determine that if the complainant had plead in abatement to the suit upon the notes and the attachment, judgments, &c., such a plea would not have been a good defence. Such was not done by the complainant. He preferred to suffer a judgment to be rendered against him without that defence. From the views above expressed, I will pass an order dissolving the injunction in the case."

From the order so passed the complainant appealed.

The cause was argued before LE GRAND, C. J., BARTOL and GOLDSBOROUGH, J.

*R. H. Alvey*, for the appellant.

1st. The credits attached were those of the wife and were in nowise liable for the debts of the husband; and a court of

Lyday vs. Douple, et al.

equity will protect the funds in the hands of the appellant, treating him as trustee for the wife. *Act of* 1853, *ch.* 245. 14 *Md. Rep.*, 258, *Bridges & Woods vs. McKenna.* And although the fund has been condemned for the payment of the debts of the husband, still the judgments of condemnation do not preclude a court of equity from taking cognizance of the matter, and granting relief to the parties upon those distinctive principles recognized, and only administered efficiently, in the equity jurisprudence. 4 *Md. Rep.*, 375, *Young & Wife vs. Reynolds.* 3 *Pet.*, 210, *Boyce vs. Grundy.* 6 *G. & J.*, 122, *Lyles vs. Hatton.*

2nd. There can be no imputation of laches or negligence to the appellant; and it would be against justice and conscience that these judgments of condemnation should be enforced, the consequences of such enforcement being, that the appellant would have to pay the money twice—once to parties clearly not entitled, and again to Mrs. Unger, who was entitled to it and can compel its payment. 5 *How.*, 141, *Truly vs. Wanzer.* 9 *How.*, 297, *Humphreys vs. Leggett.* Mrs. Unger being no party to the attachment suits she could still recover on the notes, and the attachment proceedings would be no defence by the appellant to her action. 6 *G. & J.*, 94, *Campbell vs. Poultney, et al.*

*George Schley,* for the appellees:

1st. The circuit court had jurisdiction of the attachment cases as appealed from the decisions of the justice, and the judgments rendered by that court in these cases, by which the money mentioned in the notes from Lyday to Mrs. Unger was condemned, are final and conclusive. *Acts of* 1791, *ch.* 68, *sec.* 4, and 1852, *ch.* 239, *sec.* 3. If it be conceded that the court committed an *error in law,* it would not constitute a cause for the interference of a court of equity. 2 *Story's Eq.*, *sec.* 897. 7 *Cranch.*, 336, *Marine Ins. Co. vs. Hodgson.* 1 *Johns. Ch. Rep.*, 91, *Simpson vs. Hart.* 7 *Gill*, 189, *Briesch vs. McCauly.* 6 *G. & J.*, 315, *Gott vs. Carr.* 8 *G. & J.*, 185, *Dilly, et al., vs. Barnard.* 6 *Gill*, 402, *Methodist Church vs. Mayor & C. C. of Balt.* 13 *Md.*

*Rep.*, 58, *Peters vs. League. Ibid.*, 566, *Katz vs. Moore. Ibid.*, 196, *Windwart vs. Allen.* Again, when the motion was made by Lyday to strike out the judgments in the appeal cases and overruled, the court acted in the capacity of both a court of law and equity, giving the appellant the full benefit of his legal and equitable rights. *Act of* 1791, *ch.* 68, *sec.* 4. 9 *Gill*, 248, *Cushwa vs. Cushwa.* 7 *G. & J.,* 114, *Adair vs. Winchester.* 6 *G. & J.,* 76, *Waters vs. Duvall.* 1 *H. & G.,* 7, *Gover vs. Cooley.*

2nd. The appellant had no right to constitute himself a trustee for the benefit of Mrs. Unger, or in any manner pretend to interfere, or take any part in the controversy between her and these appellees. After having made his proper defence to the attachment cases, and judgments of condemnation being rendered against him by the proper tribunal, he had no further right to complain, because these judgments he could at all times thereafter plead in abatement, to a subsequent action at law for the same money, and ought to have done so to the action of Unger & Wife against him, to recover the money condemned in his hands by virtue of the attachments, which plea would have afforded him ample protection. *Drake on Attachments, sec.* 700. 8 *Md. Rep.,* 444, *Brown vs. Somerville.* 12 *Md. Rep.,* 550, *Beall vs. Brown.*

GOLDSBOROUGH, J., delivered the opinion of this court.

This is an appeal from an order of the circuit court for Washington county, dissolving an injunction granted by that court to restrain the appellees from enforcing, by execution, certain judgments of condemnation obtained by the appellees, Douple and Mentzer, against the appellant, as garnishee of one Frederick Unger.

The cause was heard by the court below, upon the bill, exhibits, answers and statement of facts, as set forth in the record.

In the review of the action of the court below, we do not deem it material to decide upon the right of Mrs. Unger to the two notes upon which the attachments were laid, and

which she claims as her separate property, and which the appellant alleges are secured to her by the Act of 1853, ch. 245.

We affirm the order of the circuit court upon the ground, that the appellant, failing to avail himself of his proper defence at law, equity will not interfere. The principle above cited is peculiarly applicable to this case. The judgments sought to be enjoined, were rendered by a justice of the peace, and underwent a revision in an appellate court, in which the authority was vested to determine the cases according to the law, and the *equity*, and right of the matter. The judgment of that court was *final*. The appellant appears, from the record, to have been fully aware of his rights, and it does not appear that he was prevented from availing himself of any legal defence to the actions of the appellees, by fraud or accident or the acts of the opposite parties, unmixed with any negligence or fault on his part.

The case of *Gott & Wilson vs. Carr*, 6 *G. & J.*, 312, and the doctrine of the court in that case is conclusive in this.

*Order affirmed.*

(Decided June 20th, 1861.)