JOHN A. HESSER ᴇᴛ ᴀʟ. *v.* FIRST NATIONAL BANK
OF BEDFORD ᴇᴛ ᴀʟ.
[No. 34, April Term, 1930.]

*Decided June 11th, 1930.*

252

[redacted]

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Charles G. Watson,* with whom was *Charles Z. Heskett* on the brief, for the appellants.

*Fuller Barnard, Jr.,* and *Clarence Lippel,* for the appellees.

DIGGES, J., delivered the opinion of the Court.

On August 23rd, 1926, the First National Bank of Bedford, Pennsylvania, a corporation, instituted a suit in the Circuit Court for Allegany County, Maryland, against A. A. Hyde, J. D. Cessna, W. H. Carpenter, Charles G. Watson, E. J. Watson, John A. Watson, John A. Hesser, William E. Alt, and R. A. Norris. The declaration contained the common counts, and a seventh count as follows: "And for that the said defendants on the 18th day of June, 1926, by their promissory note now overdue, promised to pay to the order of The Producers Retail Association, Inc., $3,800.00 and five per cent. collection fees, sixty days after date, and the Producers Retail Association, Inc., endorsed the same to the plaintiff, and the said note was duly presented for payment, and was dishonored, whereof the defendants had due notice, but did not pay the same." The cause of action filed with the declaration was a note for $3,800, dated Bedford, Pa., June 18th, 1926, payable sixty days after date, to the order of the Producers Retail Association, Inc., at the First National Bank of Bedford, Pa. This note was signed by the defendants in the Allegany County suit, and contained the following: "Without defalcation or stay of execution for value received and confess judgment for the above sum with five per cent. added for collection fees; hereby waiving the

right of inquisition and appeal and the benefit of all laws exempting real or personal property from levy and sale." This note was endorsed by the payee thereof, for value received, the payee consenting to the conditions named in the note and waiving protest, demand, and notice of non-payment. All of the makers of this note are residents of Allegany County, Md., with the exception of Hyde, Cessna, and Carpenter, who are residents of Pennsylvania. The Pennsylvania makers were returned *"non est,"* while the Maryland makers were summoned; whereupon, the latter filed five pleas to the declaration. By the first plea they claim that the suit was on a joint note, that all of the parties had not been returned summoned, and no suit can be maintained when all the parties are not brought into court. By the second plea they allege that they were never notified of nonpayment until the suit was brought, and that the note should have been paid by the endorser, the Producers Retail Association, Inc. The third plea was in the following form: "That the alleged bill or note was sued on, before this suit was brought, in another court and that judgment was had before the bringing of this suit against some of the parties named in this suit, and the same being a joint obligation, but one suit can be brought on same." The fourth and fifth pleas were the general issue pleas. The case then proceeded to trial before the court, sitting as a jury, and resulted in a verdict for the plaintiff and against the defendants who had been summoned, namely, the Maryland makers, for the sum of $3,907, with interest from February 9, 1927. This was followed by a motion for new trial, which was overruled, and a judgment on the verdict for the sum named, with interest and costs, was entered on March 24th, 1927. The docket entries in that case show that, on the day the judgment was entered, an order of the plaintiff's attorneys was filed giving a stay of execution for seven months. The Maryland makers, who are the appellants here, filed their original bill of complaint on September 29th, 1927, against the First National Bank of Bedford, praying that the defendant be perpetually enjoined from executing upon the judgment of record in the Circuit Court for Alle-

gany County.  The defendant answered the bill of complaint.
On September 27th, 1928, the judgment, by order of the
bank duly filed, was entered to the use of W. H. Carpenter,
Ambrose A. Hyde, and J. Duncan Cessna, the Pennsylvania
makers of the note; and on September 9th, 1929, *fieri facias*
on this judgment was issued.  On September 25th, 1929, by
petition, Hyde, Carpenter and Cessna were made parties de-
fendant in the original bill of complaint.  For convenience
the complainants will be referred to herein as the Maryland
makers, and the defendants Carpenter, Hyde, and Cessna
as the Pennsylvania makers.  On October 8th, 1929, the
Pennsylvania makers demurred to the bill, which demurrer
was sustained, with leave to file amended bill of complaint.
A demurrer was filed to the amended bill of complaint,
which, upon leave, was further amended, the second amended
bill of complaint being filed January 21st, 1930.  To this
second amended bill of complaint demurrer was also filed,
which was sustained and the bill dismissed by decree dated
February 19th, 1930.  The appeal here is from that decree.

The correctness of the decree sustaining the demurrer to
the second amended bill of complaint is the question to be
decided, and in so doing the well-pleaded allegations of the
bill are admitted, for the purpose of the demurrer, to be true.
These allegations are substantially as follows: That the First
National Bank of Bedford had endorsed over to it a note by
the Producers Retail Association, Inc., on which note those
that have been here designated as the Maryland and Penn-
sylvania makers, together with a certain Grant Miller and
Fannie Mowery, residents of Pennsylvania, were makers, all
of said makers being stockholders of the Producers Retail
Association except E. J. Watson; that renewal notes were
given from time to time by the Maryland makers signing a
note and sending it to Carpenter or Cessna, both of whom
were directors, and Cessna president, of the Producers Retail
Association, Inc.; that it was their duty to get all the other
names of the parties to said note living in Pennsylvania, put
the note in bank, and have the old note, for which it was to be
a renewal, canceled; that at some time during the several

renewals of said note (at which one of said renewals, or at what time, the complainants are unable to say), the names of Grant Miller and Fannie Mowery were left off the note; that the bank accepted the note from which these names were omitted as a renewal of the note with all the names thereon; that the Maryland makers received no notice, either from the bank or from the Pennsylvania makers, that any names had been omitted from the renewal notes, until the bringing of the suit in Allegany County; that the acceptance of the renewal note with two of the makers left off, without any notice to the Maryland makers, was fraud practiced by the bank upon them, and was also aiding the Pennsylvania makers to commit fraud on them; that the bank knew all of the makers living in Pennsylvania, and their relation to each other; that on April 19th, 1926, there having been some payments made on the original indebtedness, the note was renewed for the sum of $3,800 for sixty days; that some time in June, 1926, and before the 19th, the Maryland makers signed a note dated June 18th, 1926, for the sum of $3,800, and mailed the same to either Carpenter or Cessna, whose duty it was to get the other makers on the note, as the complainants supposed they had always been doing, namely, all of the Pennsylvania makers, including Miller and Mrs. Mowery, take the same to the bank, and have the old note, due June 18th, 1926, canceled and delivered to them, but that they got only the names of Cessna, Hyde and Carpenter; that Cessna, Hyde, and Carpenter delivered the said note to the bank without having the old note canceled, for the purpose and with the intention of committing fraud upon the Maryland makers, and that the bank entered into and aided them in said fraud; that the bank, instead of canceling the note due June 18th and delivering the same to the Pennsylvania makers, brought suit and had judgment confessed in the Court of Common Pleas at Bedford, Pa., against all of the Maryland and Pennsylvania makers; that the Maryland makers had no knowledge of said suit or that a judgment had been entered against them in Pennsylvania; that said judgment was not appealed from or set aside, and stood unsatisfied until December 30th, 1929,

when the same was entered satisfied by order of the bank's attorney; that the Maryland makers had been informed that said judgment was paid and satisfied long before the date of its satisfaction on the record, and before the judgment was entered against them in Maryland; that the note dated June 18th was delivered to the bank by the Pennsylvania makers without having the old note canceled, with intent to defraud the complainants, and that they allowed the bank to retain both notes; that the bank, in furtherance of said fraud and scheme to compel the complainants to pay the whole of said note, retained said note until it became due, and on August 23rd, 1926, brought suit on same in the Circuit Court for Allegany County, Md., against all the parties to said note, but that only the Maryland parties could be summoned, and the Pennsylvania makers were returned "*non est*"; that a second summons was not issued against them, although there was nothing in the pleadings to show that they were nonresidents of Maryland; that the Allegany County suit came on for trial on February 9th, 1927; that during the testimony of one of the bank officials at the trial it was ascertained that the note dated June 18th, 1926, had not been accepted by the bank as a renewal of the note dated April 19th, 1926, but that judgment had been confessed on the latter in Bedford, Pa., on June 19th, 1926, and that the bank retained the note intended for a renewal note, for the purpose of bringing suit in Maryland; that it then for the first time came to the knowledge of the complainants that the note dated June 18th, 1926, had not been accepted by the bank as a renewal, and the note dated April 19th, 1926, had not been canceled; that the complainants were taken completely by surprise and moved for a continuance of the case, but the court refused to grant a continuance, and at once rendered a verdict against the complainants for the sum of $3,907; that Cessna, Carpenter, and Hyde appeared at the trial and refused to have their appearance entered in the suit, but rendered all the assistance they could to the bank in obtaining the verdict; that the bank and the Pennsylvania makers kept the Maryland makers in ignorance of what was being done about the notes; that a plea

was entered by the Maryland makers to said suit that a suit had been brought on the same note in another court, as a precautionary matter, thinking that it might have been done, and for that reason two of the complainants asked Cessna a short time before the trial if suit had been brought on the note in Bedford (referring to the note due June 18th, 1926), and he answered by saying, "Not that I know of," but that he well knew that the judgment had been obtained in Bedford on June 19th, 1926, on the note that the complainants had every reason to believe had been canceled; that the note sued on in Maryland was the original note and not a copy; that the thought that the former note had not been canceled never entered the minds of the complainants, they having no idea that the bank would accept a note that it knew was intended for a renewal, and not cancel the old note, but bring suit on it the next day; that the Pennsylvania makers turned over the note of June 18th, 1926, to the bank, and let the bank keep the old note, on which it obtained a judgment by confession the day after it was due, and then held the renewal note and sued on it as soon as it became due in the Circuit Court for Allegany County, well knowing that both notes were for the same debt, and that it already had a judgment in Bedford; that the suit in Maryland was brought on a void note, one that never had any consideration and had been diverted from the use that all the makers knew it was intended for, and that the judgment in Maryland was obtained through fraud and deceit practiced upon the complainants by the defendants; that the complainants filed their original bill on September 29th, 1927, praying that the bank be enjoined from executing upon said judgment of record in the Circuit Court for Allegany County; that the case was set down for hearing, but that the attorney for the bank was never ready, until finally, some time in February, 1928, he notified the complainants that the bank had no further interest in said judgment, with no further explanation, but the bank left the Pennsylvania judgment standing open until December 30th, 1929, on which day the attorney for the bank entered the same satisfied; that

in reality the judgment had been satisfied and paid before February, 1928; that on September 27th, 1928, the attorney for the bank entered the Allegany County judgment to the use of the Pennsylvania makers; that the complainants charge that the Allegany County judgment is null and void, and the defendants should be enjoined from issuing execution on same. The prayer is: "That your Honorable Court pass a decree declaring the said judgment, No. 227, Trials, January, 1927, to be null and void and that the said Duncan Cessna, W. H. Carpenter and A. A. Hyde be forever enjoined from executing upon or in any manner enforcing the collection of said judgment."

The position taken by the defendants is that all of the matters recited in the bill of complaint were submitted to and considered by the Allegany County Court in the suit at law which resulted in the judgment, the execution of which is now sought to be restrained. The law on that point is well settled and not open to controversy in this state. In *Gott v. Carr*, 6 G. & J. 309, our predecessors, speaking through Chief Judge Buchanan, said: "It is a salutary principle of law, that every person is bound to take care of and protect his own rights and interests, and to vindicate them in due season, and in the proper place. And that if a defendant having the means of defense in his power in an action against him, in a competent tribunal, neglects to use them, and suffers a recovery to be had against him, he is forever precluded from obtaining relief in chancery, in relation to the same matter. The application of this principle may not be universal; but the cases in which chancery will furnish relief against recoveries suffered to be had at law, are exceptions. The well settled general rule being, that a court of equity will not relieve against a recovery in a trial at law, unless the justice of the verdict can be impeached by facts, or on grounds, of which the party seeking the aid of chancery could not have availed himself at law, or was prevented from doing it by fraud or accident, or the act of the opposite party, unmixed with any negligence or fault on his own part." The principle there laid down has been followed and stated in varying lan-

guage in many subsequent cases in this court. In *Maryland Steel Co. v. Marney,* 91 Md. 360, where an attempt was made to have a court of equity restrain the execution of a judgment at law on the ground that it had been obtained by perjury and subordination of perjury, Chief Judge Boyd, speaking for the court, reviewed the decisions in this state and elsewhere, and clearly enunciated the rule adopted in *Gott v. Carr, supra,* setting forth the reasons therefor. See also *Smith v. Lowry,* 1 Johns. Ch. 320; *United States v. Throckmorton,* 98 U. S. 61; *Marine Ins. Co. v. Hodgdon,* 7 Cranch. (U. S.), 332; *Dilly v. Barnard,* 8 G. & J. 171; *McCormick v. McCormick,* 104 Md. 325; *Twigg v. Hopkins,* 85 Md. 301; *Ahern v. Fink,* 64 Md. 161; *Cumberland & P. R. Co. v. Pennsylvania R. Co.,* 57 Md. 267; *Gorsuch v. Thomas,* 57 Md. 334; *Kirby v. Pascault,* 53 Md. 531; *Lyday v. Douple,* 17 Md. 188; *Trustees M. E. Church v. Baltimore,* 2 Md. Ch. 79.

It is undoubtedly true that the complainants were entitled to make all of the defenses in the suit at law in Allegany County which they now urge as entitling them to injunctive relief, provided they knew or by ordinary diligence could have ascertained such defenses at the time of the law trial, or unless they were prevented from making such defenses by the fraud or deception of the defendants, unmixed with negligence on their part. The complainants had reason to believe that the note upon which suit was brought in Allegany County had been received by the bank as a renewal for the note dated April 19th, 1926, and that the latter note had been canceled at the time of the acceptance of the note sued on. It was presented to the bank by the same means as had been employed in numerous previous renewals, and if there was nothing in the record to show to the contrary, we think the complainants would have been justified in assuming that the note, for which the last note was given as a renewal, had been cancelled. But the third plea which the complainants filed to the declaration in the Allegany County suit, on September 27th, 1926, more than four months before the trial, is record evidence of the fact that the complainants had sufficient notice to put them upon inquiry as to whether or not a

judgment had been entered on the previous note, which became due June 18th, 1926. The bill alleges that some one or two of the complainants made inquiry of one or more of the Pennsylvania makers as to whether or not the note forming the cause of action in the Allegany County suit had been sued on, and the alleged reply to that inquiry was that it had not, as far as the party questioned knew. This answer, if true, did not in our opinion relieve the complainants from making further inquiry, because by it they were left in the same position as before the answer was elicited.

The present case presents an anomaly, in that the parties on each side, in their briefs and oral arguments in this court, contend that they are ready and willing to do what equity and justice requires, but each vehemently argues that the other is attempting to gain some unconscionable advantage, the Maryland makers admitting their liability for contribution, but claiming that the defendants are seeking to collect the whole of the judgment against them, while escaping liability for their just proportion; and on the other hand, the Pennsylvania makers declare their purpose to be only to collect contribution from the complainants, but contend that the complainants are endeavoring to escape any liability whatever. There is no allegation in the bill of complaint that the Pennsylvania judgment obtained on the note dated April 19th, 1926, and due June 18th, 1926, was recovered after the acceptance of what was intended to be a renewal note, to wit, the note dated June 18th, 1926. If the Pennsylvania judgment was obtained before the receipt of the last renewal note by the bank (and, as stated, the date of its receipt is not alleged), the bank knew that the renewal note was intended by the makers to take the place of the debt represented by the judgment, of the obtention of which they had no knowledge, and when it accepted the renewal note, it must be held to have been the intention of the parties, the bank as well as the makers, that it was proffered and accepted as a renewal, which had the effect of canceling the old note, if it had not been reduced to judgment, or satisfying the judgment if such had been obtained. We think the bank's intention to this

effect is indicated by the further fact that they did not attempt to execute upon the Pennsylvania judgment, or make it the basis of a suit in Maryland, but sued upon the new note at the expiration of sixty days, the time for which it was given. This being true, the bank had the undoubted right to sue the Maryland makers in Allegany County, and recover the whole amount of the debt against them; which course, if pursued to recovery, would have permitted the Maryland makers, after paying the Maryland judgment, to institute original proceedings in Pennsylvania against the Pennsylvania makers for contribution. It is apparent that the Pennsylvania makers paid the Maryland judgment to the bank, which judgment was entered to their use. Such action by them was equivalent to their paying their proportionate part of the judgment and having such payment credited on the judgment, leaving them free to obtain satisfaction from the Maryland makers of their just proportion of the debt. Having now issued execution on the judgment against the Maryland makers, they are entitled to collect from each to the extent of their respective liability, and no more.

It is alleged in the bill that two of the makers of the original note were improperly, and without the knowledge of the Maryland makers, left off of the renewal notes; that the remaining original makers from Pennsylvania purposely, or through neglect, unknown to the Maryland makers, failed to have Miller and Mrs. Mowery sign the renewal notes; that the estate of Miller, who is now deceased, was solvent, and that Mrs. Mowery is solvent; and that therefore the action of the remaining Pennsylvania makers resulted in injuring the Maryland makers to the extent of increasing their liability, which was originally one-eleventh, to one-ninth. The decision of this question depends upon proof, and we can express no opinion in the absence of evidence on that point. The reply of the defendants is that the Maryland makers knew that these two Pennsylvania parties had been left off of the note, not only the last note, but several renewal notes previously given; that they acquiesced in such action, and can-

262

not now complain. This contention likewise can only be determined by proof of the facts.

Our conclusion is that the execution of the judgment. obtained in the Circuit Court for Allegany County should not be restrained, but that satisfaction thereunder should be limited, against each of the Maryland makers, to the amount which, after taking testimony, it shall be found that he is equitably bound to pay. The decree of the lower court dismissed the bill, and therefore the same will have to be reversed, and the case remanded for further proceedings in accordance with the views herein expressed, in order that the amount due by each of the Maryland makers be definitely ascertained, and, unless paid, execution be allowed for the purpose of collecting such sums.

> *Decree reversed, and cause remanded for further proceedings in accordance with this opinion, each side to pay one-half of the costs.*