## MARJORIE T. REDDING, ET AL. *v.* WILAMINA REDDING

[No. 26, January Term, 1942.]

*Decided May 4, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, FORSYTHE, and MARBURY, JJ.

*Omar D. Crothers, Jr.,* for the appellants.

*James Weinroth* for the appellee.

SLOAN, J., delivered the opinion of the Court.

Marjorie T. Redding, the appellant, entered a judgment by confession on July 29, 1939, in the Circuit Court for Kent County, against James R. Redding, her former husband, and Harry L. Redding and Mrs. Harry L. (Wilamina) Redding, father and mother of James R. Redding, on a promissory note dated July 1, 1937, payable one month after date, and signed by James R. Redding, Marjorie T. Redding, Harry L. Redding, Mrs. H. L. Redding and Mary A. Todd, the last named the mother of Marjorie T. Redding, for the sum of $993. They all, including the plaintiff, signed as makers, though Harry L. Redding, Mrs. Wilamina Redding, otherwise known as Mrs. Harry L. Redding, and Mary A. Todd were accommodation makers, and James R. Redding and Marjorie T. Redding were the principal debtors. The note, which represented a loan from a bank, was originally $1,600, the money having been borrowed to buy and finance an ice cream and confectionery business at Galena in Kent County. After the death of Mr. Todd, father of Marjorie, the bank demanded other endorsers, and Wilamina Redding, at the solicitation of Marjorie Redding and Mary Todd, joined as a maker. After the last renewal, Mrs. Todd died.

James and Marjorie Redding sold the store and business, the record does not show just when or for what. Then Marjorie Redding went to Florida, where she secured a divorce from James R. Redding. She says she paid off the note to the bank from money she inherited or obtained from her mother's estate; he says: "The money that we got for the business, when we sold it, we paid over on this note, and there was a right good bit left, then we kept paying on the note a little at a time. Her mother died and after her death she went down to Chestertown and paid this note off so that we would not have to fool with it any more."

It makes no difference whether either or both of them paid the note, when it was done the accommodation makers were released, and when the judgment was en-

tered Harry L. Redding and Wilamina Redding, his wife, did not owe Marjorie Redding any part of the debt. "A negotiable instrument is discharged: * * * 5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right." Code, 1939, Art. 13, Sec. 138; *Crothers v. National Bank of Chesapeake City,* 158 Md. 587, 593, 149 A. 270; 11 *C. J. S., Bills and Notes,* p. 300, Sec. 746; 8 *Am. Jur.* 213, Sec. 465.

Despite all this, Marjorie Redding not only entered a confessed judgment for the amount of the note against Wilamina Redding in Kent County, but she transferred it to Cecil County where she caused an execution to be issued and the sheriff levied on furniture, farming implements, live stock and a half interest in a wheat crop, the property of Wilamina Redding, who thereupon filed a bill against Marjorie Redding and David J. Randolph, sheriff, praying the writ of injunction. After a hearing the chancellor passed a decree granting the plaintiff an injunction, from which the defendant, Marjorie Redding, appeals.

The appellant's sole contention is "that a court of equity should not have enjoined execution on a judgment upon a legal defense not previously exercised or offered in a court of law," and cites numerous cases from this court to that effect.

The rule as stated in *Gott v. Carr,* 6 Gill & J. 309, 312, is: "It is a salutory principle of law, that every person is bound to take care of and protect his own rights and interests and to vindicate them in due season, and in the proper place. And that if a defendant having the means of defence in his power in an action against him, in a competent tribunal, neglects to use them, and suffers a recovery to be had against him, he is forever precluded from obtaining relief in chancery, in relation to the same matter. The application of this principle may not be universal; but the cases in which chancery will furnish relief against recoveries suffered to be had at law are exceptions. The well settled general rule being that a court of equity will not relieve against a recovery in a

trial at law, unless the justice of the verdict can be impeached by facts, or on grounds, of which the party seeking the aid of chancery could not have availed himself at law, or was prevented from doing it by fraud or accident, or the act of the opposite party, unmixed with any negligence or fault on his own part." *Hesser v. First National Bank,* 159 Md. 251, 258, 150 A. 723, and cases there cited. See annotations to *Salmon v. Clagett,* 3 Bland 125, 126, Brantley's Ed., pp. 118-128; *Gott v. Carr,* 6 Gill & J. 209; 3 *Freeman on Executions,* 3rd Ed., Sec. 435; 23 *C. J., Executions,* Sec. 553. An examination of the cases in this State and elsewhere shows that in nearly every instance, where there has been no fraud, mistake or deceit, which would be equitable grounds of relief, the party seeking relief in equity was summoned and had notice with plenty of opportunity to appear and present his defenses, and that the subsequent proceeding was for reasons which could have been advanced in the trial at law. Under such circumstances it has generally been held that the defendant in the suit at law is estopped.

In this case the appellee, with the other makers, had signed a judgment note, on which judgment had been summarily entered against her, and by the party who had released her. There was no opportunity for her to offer any defense to the action of the appellant, a principal debtor, who had herself paid the note and thereby released the appellee, who is now entitled to relief somewhere, somehow. The appellee had not been summoned or notified, no summons or notice was necessary, but after it was entered she was told casually by a lawyer at Chestertown of its entry, who told her "not to bother with it, that he did not think it would come up."

What Mr. Justice Brown said in *Schroeder v. Young,* 161 U. S. 334, 345, 16 S. Ct. 512, 516, 40 L. Ed. 721, is applicable, and that is: "It would be a reproach to a court of equity if it could not lay hold of such a transaction as this is shown to be, and set aside a sale of property acquired under the forms of law and in defiance of natural justice."

In 21 *Am. Jur., Executions,* Sec. 531, p. 263, is the statement: "The right, in a proper case, to secure relief from an execution by an original bill in equity is recognized." In *Gardner v. Jenkins,* 14 Md. 58, 62, it is said, quoting *Fowler v. Lee,* 10 Gill & J. 358, 363, 32 *Am. Dec.* 172: "Courts of chancery do not lightly interfere with judgments at law. It is only for the prevention of fraud, or to relieve from substantial injury or gross injustice, that its high and extraordinary power of interference by injunction is ever resorted to. It is never merely for the correction of informalities or irregularities in legal or judicial proceedings. He who seeks to avail himself of such defects, must prosecute his remedies at law; from a court of equity he can receive no countenance." From the oral statement of the chancellor in this case it was the "gross injustice" of the appellants' claim that determined his action.

In this State, however, there is some justification for restraining a sale of personal property, due, perhaps, to the necessity of quick and effective action. The Act of 1799, Chap. 79, Code, 1939, Art. 16, Sec. 90, reads: "In all cases where a sheriff, or other officer, is prevented by an injunction from selling personal property taken in execution, he shall deliver back the property taken in execution to the party from whom it was taken, and shall not be answerable to the plaintiff at law on account of the same." In this case the levy was on personal property. In the *Cape Sable Company's Case,* 3 Bland 606, 607, 637, it was held that this Act had no application to real property.

We are, therefore, of the opinion that the decree appealed from should be affirmed, but the affirmance does not give the appellee complete relief. She should go into the law case and, on a motion, have the judgment against her stricken out, so that no further action may ever be undertaken or attempted.

*Decree affirmed, with costs.*