W. C. GORDON AND MERLE M. VAIL, ALL THE HEIRS AT LAW OF AUBREY G. GORDON, DECEASED, AND W. C. GORDON. ADMINISTRATOR OF THE ESTATE OF A. G. GORDON, DECEASED, v. WALTER A. RAYMOND, AS SUCCESSOR TRUSTEE FOR ESTELLE LEE KERNS AND ESTELL LEE KERNS—186 S. W. (2d) 849.

Kansas City Court of Appeals. March 5, 1945.

322

*Homer A. Cope, Cope & Hadsell* and *Walter A. Raymond* for appellants.

*Ben Clardy,* for respondents.

CAVE, J.—This is an appeal from a judgment of the circuit court of Jackson County canceling a certain note and deed of trust in the principal sum of $3,500, and enjoining the defendants from enforcement of the same.

The petition alleged that the plaintiffs, W. C. Gordon and Merle M. Vail, were the only heirs at law of Aubrey G. Gordon; that plaintiff, W. C. Gordon, was the administrator of the estate of said Aubrey G. Gordon; *that the deceased, on March 16, 1936, executed a deed of trust and recorded the same,* conveying to Clarence Skinner, as trustee for Estelle Lee Kerns, lots 92 and 93 Eastwood Hills, *in trust to secure his promissory note in the sum of $3,500 with interest at 6%.* The petition further alleged that said note was not given for a bona fide debt; was never *delivered* to defendant, Estelle Lee Kerns; that deceased was not indebted to her and said *note* was *without consideration;* that said defendant was not and never had been the *legal holder of said note;* that the designated trustee, Clarence Skinner, had died; that the sheriff, as substitute trustee, has advertised the property for sale under said deed of trust, but had not gone through with the sale; that the defendant, Walter A. Raymond, as successor trustee, had advertised said property for sale and would sell it unless restrained; that said sale would cause irreparable damage and that plaintiff had

no adequate remedy at law. The petition prayed that defendants be enjoined from selling or attempting to sell said property under said deed of trust; and that the note and deed of trust be canceled and set aside and released of record. (Italics ours.)

The answer of defendant, Raymond, consisted of a general denial, and admission of his appointment as successor trustee, and admission of the publication of the notice of sale.

The answer of defendant, Mrs. Kerns, consisted of a general denial, and admission of the death of Aubrey C. Gordon, the appointment and qualification of the plaintiff, W. C. Gordon, as administrator; and admits the execution and recording of the deed of trust by the deceased, but denies the allegations of nondelivery and want of consideration; admits the death of Clarence Skinner, the trustee, the action of the sheriff as substitute trustee in advertising, but failing to sell said property; admits allegations setting forth the appointment of defendant, Walter A. Raymond, as substitute trustee, and the advertising of the property for sale, and prays that the petition be dismissed.

Trial was had before the court, resulting in a judgment for plaintiffs and against defendants, enjoining the defendants from foreclosing said deed and decreeing that the note and deed of trust be canceled and set aside for naught held, because ''the note and deed of trust . . . were never delivered, were without consideration and that the defendant, Estelle Lee Kerns, was not the legal holder of said note.'' From this judgment the defendants appeal.

Specific errors are assigned to the findings of the court, and error in admitting and excluding certain evidence.

It is undisputed that, on March 16, 1936, Aubrey C. Gordon signed a promissory not for $3,500, with interest from date at the rate of 6% per annum, payable semiannually, to Estelle Lee Kerns or order; that on the same day he executed a deed of trust to secure the payment of the debt evidenced by the note; and by said deed of trust conveyed certain real estate therein described to one Clarence Skinner, as trustee; and that he, Aubrey C. Gordon, recorded the deed of trust in the office of the Recorder of Deeds the following day. It is also undisputed that the administrator of deceased found the note and deed of trust in a strong box in a trunk belonging to deceased and located in his apartment; and that the substitute trustee would have foreclosed the deed of trust if he had not been enjoined.

The oral testimony, offered by plaintiffs, may be summarized as follows: William C. Gordon, administrator and brother of deceased, testified that he was a captain of police in Kansas City; that he and his sister, Merle. M. Vail, of Chicago, were the only remaining heirs at law of the deceased; that he found the note and deed of trust in the bottom of a trunk in an iron box with deceased's other papers; that he was not very familiar with deceased's affairs; that he knew

nothing about the execution of the note and deed of trust and did not know of his brother borrowing money from anybody; that deceased had been unemployed for several months prior to his death, and that the only cash he, as administrator, had found belonging to his brother was about $20 in his pocket; that a Miss Hawkinson, (a witness for defendants), was a friend of the deceased, and was with him at the time of his death.

C. A. Tate testified that up until the last eighteen months of the life of Aubrey G. Gordon they were close friends and together almost constantly; but about that time they had a quarrel and had not been reconciled since. Over the objections of defendants, this witness was permitted to testify that at one time or another all of deceased's properties were in the name of the witness by mortgage, although the witness did not own them; that deceased was in the habit of keeping his property mortgaged in someone else's name, "but he always kept both ends of the mortgage"; that about 1933 deceased put a mortgage on the property in question in the name of the witness and the witness' wife, and that prior to March 16, 1936, that mortgage was released so that deceased could sign a redemption bond.

Ralph De Pugh, a deputy sheriff, testified that he handled the foreclosures of the sheriff's office; that the property in question was advertised and he noticed the advertisement in the Daily Record over the sheriff's name as substitute trustee; that he talked with administrator, Gordon, several times and learned the facts about the note and deed of trust being found in deceased's iron box at the time of his death, and that the administrator then had possession of the note and deed of trust; that he checked the record and found that taxes had not been paid on the property since 1934; that when the note was not produced at the hour of sale, no sale was made. This is all of plaintiffs' oral testimony. The note and deed of trust were admitted in evidence.

Defendants' oral testimony, summarized, is: Marie Hawkinson testified that she had known Aubrey G. Gordon and Mr. and Mrs. Kerns for ten or twelve years, and had kept company with Gordon for the past eight years; that they were all good friends; that Mrs. Kerns operated a beauty shop and Mr. Kerns owned and operated a restaurant and tavern; that they had apparently been successful; that in 1935 or 1936 Gordon was having some financial difficulty, but she didn't know much about it; that about the first of the year 1936 she was present when deceased borrowed $500 from Mrs. Kerns; that she based her statement that he was having financial difficulty on the fact that he was borrowing $500 from Mrs. Kerns; she didn't know much about his other financial affairs. In addition to borrowing that $500, she had seen him borrow, from Mrs. Kerns, sums of $50 to $100 at different times; that on one occasion in 1936 she stopped to see Mr. Gordon at his apartment, and while there he was examining

some of his personal papers, and while he held some papers in his hand "he said he should take those papers to Mrs. Kerns. . . . Q. Did he say what the papers were? A. Well, regarding the mortgage, the deed of trust or note? Q. The note and deed of trust? A. Yes. Q. Did you examine the note and deed of trust? A. No, I didn't. Q. What was he doing as he came across these papers? A. He was just looking through his effects he had in that tin box. Q. Then what did he say? A. Well, he said, 'here are the papers regarding the Eastwood Hills property that I must take to Mrs. Kerns.' " She was unable to state whether the papers he held in his hand were the note and deed of trust in controversy; but he did say such papers belonged to Mrs. Kerns.

Mary Lass testified that she had worked as a waitress in Mr. Kerns' restaurant since January 1, 1936, and knew Mr. Gordon and Miss Hawkinson; that they frequently had meals at the restaurant; that about March 1, 1936, Mr. Gordon and Mrs. Kerns were having a meal together and she was serving them; that she saw Mrs. Kerns give Mr. Gordon $100 and, from their conversation, she understood he was borrowing it; that on other occasions she had seen Mrs. Kerns give Gordon $25; on cross-examination she was not positive the money she had seen Mrs. Kerns give Gordon was a loan.

Edith Duncan testified she was a daughter of Mrs. Kerns; that she had been associated with her mother in the beauty parlor business for thirteen years; that she was at her mother's around the first of the year 1936 when Gordon came there and stated to her "that he didn't think he would ever get mother paid off; . . . he wanted her to accept this deed of trust on this property in Eastwood Hills; . . . " that she had made a number of withdrawals from her mother's bank account to be loaned to deceased; that she saw her mother loan deceased sums of money from $25 to $200 on various occasions; that on one occasion she heard her mother and Mr. Gordon discussing the question of security of what Gordon owed her mother, "he wanted her to accept this deed of trust on this property in Eastwood Hills. Q. And did she agree to keep it? A. Yes. Q. Was there anything said in your presence as to how much that debt amounted to? A. No, sir." She knew nothing about the actual making of the note and deed of trust.

Mr. Stone testified that he was deputy recorder of deeds of Jackson County and had supervision and control of the records kept in that office; that it is the custom and practice in the recorder's office to require the person to sign a receipt when a recorded instrument is delivered to such person; that the record show that on May 11, 1936, Estelle Lee Kerns signed for the delivery of the deed of trust in controversy.

There was evidence that deceased had been employed by Jackson County in some capacity for a number of years; that he was in good

health until the time of his death; that he had purchased the real estate described in the deed of trust in about 1924 or 1925, but the residence thereafter burned and at the time of the giving of the deed of trust the property was assessed for $700 or $800 and worth approximately $2000; that the taxes had not been paid since 1934.

There are but two real issues joined: (a) Were the note and deed of trust delivered?; (b) was there any consideration for the note?

Plaintiffs having pleaded execution of the note and deed of trust by deceased but allege *no delivery* and *no consideration,* have the burden of proof, and such burden remains untill the termination of the case. [Galloway v. Galloway, 169 S. W. (2d) (Mo.) 883, 888.]

It is uniformly held that the making of a deed and placing it of record by the grantor, affords a legal presumption which, though rebuttable, can only be overcome by evidence removing any reasonable doubt that it was the intention of the grantor, implied by the act of making it a public record, to deliver the deed to the grantee. [Burkey v. Burkey, 175 S. W. (Mo.) 623; Jones v. Jefferson, 334 Mo. 606, 66 S. W. (2d) 555; Chambers v. Chambers, 227 Mo. 262, 284.]

Plaintiffs seem to concede this to be the law in regard to a deed, but contend it does not apply to a deed of trust. They cite no authority to support that contention and offer no argument why there should be a different rule with reference to a deed of trust, other than to say it is so. We can see no reason why the same rule should not apply to a deed of trust as to a deed, in so far as raising a presumption of delivery. This conclusion is supported by the holding of the St. Louis Court of Appeals in McCune v. Daniels, 251 S. W. 458.

We find no substantial evidence in the record to overcome the presumption of delivery of the deed of trust. The mere fact that the grantor had it in his possession at the time of his death is not sufficient to destroy the presumption of delivery. [Chambers v. Chambers, *supra*; Burkey v. Burkey, *supra*.] But plaintiffs say that even though it be held that the deed of trust was delivered, nevertheless there is no evidence that the note itself was delivered. They cite Section 3032, Revised Statutes Missouri 1939, and cases to the effect that a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. There is no question about this being the law.

But in this case the deed of trust placed of public record in the recorder's office recites that grantor conveyed certain real estate to a trustee ". . . For the following purposes: Whereas, the said first party did on the 16th day of March, 1936, *make and deliver* to third party (Estelle Lee Kerns) . . . "; then follows a copy of the note in controversy. (Italics ours). We think this solemn declaration made by the grantor (deceased) in the deed of trust and placed of record by him, clearly raises a presumption that the note was delivered to the payee, Mrs. Kerns.

In Chambers ᵣv. Chambers, *supra*, the Supreme Court said, 285: "Deeds of record are much too solemn and stable instruments to be blown away with a mere breath of testimony, or overturned by evidence falling short of the stringent character indicated."

There was no evidence the note had not been delivered except that it was found in the maker's possession after his death. This, alone, would not destroy his solemn declaration in the deed of trust that he had *made and delivered the note*. We are cited to no Missouri case, and we find none, that holds to the contrary; but in Rock Ridge Park v. Wells et al., 149 Pac. 792, the Court of Appeals of California specifically holds that the delivery of a deed of trust, from the very nature of the transaction and based upon the common experience of mankind, raises a presumption that the note was delivered contemporaneously with the delivery of the deed of trust given to secure its payment. This presumption is further supported by the declaration in this trust deed that the note had been *delivered*.

But, aside from this question, the deed of trust purported to secure ". . . debt and interest expressed in said note and every part thereof. . . . ." And this being a suit to enjoin the foreclosure of the deed of trust, as well as cancel it, for certain reasons, it would make no difference whether the note described was ever executed or delivered *if* the deed of trust was given to secure a *valid debt*. [Young v. Levine, 326 Mo. 593, 31 S. W. (2d) 978, 983; Mandle v. Horstool, 198 Mo. App. 649.] It was not necessary for the substitute trustee to have the note in his possession to authorize him to advertise and sell the property upon default by the mortgagor. [Dolan v. Talle, 263 S. W. 204, 246.]

We hold plaintiffs' evidence wholly fails to prove their allegation of nondelivery of the instruments.

Now with reference to the question of *no consideration*. The execution of the note is admitted and it recites it was given "For value received. . . . ." Section 3040, Revised Statutes 1939, provides, "Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value." This note imports a consideration and the plaintiffs seek to have it canceled for want of consideration. Under such circumstances, they have the burden of proof, and the proof must be substantial. [Glascock v. Glascock, 217 Mo. 362; Hess v. Hessel, 102 S. W. (2d) 729; Duvall v. Duncan, 341 Mo. 1129, 111 S. W. (2d) 89; Thompson v. McCune, 333 Mo. 758, 63 S. W. (2d) 41, 43.] We find no substantial evidence which tends to destroy the presumption of consideration.

Deceased's brother testified that he was not very familiar with deceased's affairs and never knew of his brother borrowing money from anybody. Witness Tate stated that he knew nothing about this transaction, but did testify that it was deceased's practice to keep

his property mortgaged and "to keep both ends of the mortgage." There was evidence that deceased had been employed at a fair salary and that he had some property, but there is no evidence of its kind or value. Defendants offered evidence to the effect that Mrs. Kerns had loaned deceased various amounts of money about the time the note and deed of trust were executed, but whether this evidence is to be believed or not, plaintiffs have utterly failed to meet the burden the law places on them to overcome the presumption that the note was given for a valuable consideration. We notice in plaintiffs brief the statement that at the time this note and deed of trust were executed, Mrs. Kerns owed deceased $500, which was evidenced by a chattel mortgage "on record in the recorder's office, . . . " and that the deceased, in 1936, "sold property for $5750." We have diligently searched the record to find evidence to support either or both of said statements, but we find none. Plaintiffs' attorney asked some of defendants' witnesses if they didn't know about the $500 chattel mortgage or the sale of property for $5750, and in each instance the witnesses said they did not know anything about it. We find no evidence or any other reference to such matters in the record. The record discloses that plaintiffs' attorney offered some chattel mortgages given by Mrs. Kerns and her husband, but the court sustained objection to their introduction and plaintiffs' attorney stated that he would supply the documents for the record. But, if so, none is printed, and we have no information concerning them.

This being a suit in equity, it is our duty to weigh the evidence and to make our own findings. Where the oral testimony is in conflict and the credibility of witnesses must be judged, the chancellor having heard the testimony and observed the demeanor of the witnesses, is thereby better enabled to determine their credibility, and this court will generally defer to his findings unless satisfied that such findings are against the weight of the evidence.

However, in this case, there is no substantial conflict in the oral testimony but, on the contrary, the essential facts are undisputed; that is, the making and execution of the note and deed of trust; the recording of the same by the maker, and the record in the recorder's office showing delivery of the deed of trust to Mrs. Kerns, the payee in the note and the *cestui que* trust in the deed of trust. Such facts, under the law, give rise to the presumption that the deed of trust and note were delivered to Mrs. Kerns and the note was for a valuable consideration.

Plaintiffs having failed to produce any substantial evidence to overcome such presumption, thereby failed to bear their burden of proof, and the court erred in rendering judgment for them. This is a clear case of failure of proof. We are not permitted to guess, speculate or surmise on the issues made.

We are always reluctant to disagree with the able trial judge but, under the law and the evidence, as we view it in this case, we are forced to the conclusion that the court erred in the judgment rendered. It follows that the judgment should be reversed. It is so ordered. All concur.