Snyder, Appellant, *v.* Town Hill Motors, Inc.

Argued September 20, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Howard M. Girsh,* with him *William P. Thorn,* for appellant.

*Harry Cohen,* with him *Ralph Schwartz,* for appellees.

OPINION BY MONTGOMERY, J., November 16, 1960:

This was an action of assumpsit in which minor appellant sought to recover $1,000.00 from appellees on three theories, viz., (a) fraud perpetrated by appellees upon him, (b) the right of rescission of a minor's contract, and (c) the right of an infant to rescind the negotiation of an instrument under §3-207 of the Uniform Commercial Code of 1953, April 6, P. L. 3 (12A P.S. §3-207). The jury returned a verdict for defendants (appellees) and appellant's motions for judgment n.o.v. and a new trial were refused.

The following relevant facts are established from the stipulation filed in lieu of printing the notes of testimony:

The minor (Snyder) contracted with his friend, Rhea, to purchase the latter's 1955 Chrysler automobile for $1,000.00 and the trade of his 1946 Pontiac automobile. Thereafter they went to the place of business of the Town Hill Motors, Inc. (hereinafter referred to as Motor Company), where Rhea negotiated with Abbamondi, the Motor Company's salesman, for the purchase of a Lincoln automobile. Thereupon, Rhea instructed Snyder to assign the title of the Pontiac to the Motor Company and to endorse and deliver to it the check for $1,000.00 made to Snyder's order and in his possession, as the down payment by Rhea on the Lincoln. Snyder intended to use the check in payment for the Chrysler. Snyder complied with Rhea's instructions, delivered the check and title to Abbamondi as agent for the Motor Company, and demanded a receipt from Rhea, who gave it in the following form:

"Received of Richard Snyder one-thousand dollars and 1946 Pontiac Coupe . . . in exchange for a 1955 Chrysler Windsor. . . ."

Snyder accepted delivery of the Chrysler; but one month or more later he returned it to the Motor Company and, contending that the amount of an encumbrance on the Chrysler was more than Rhea had represented it to be, demanded the return of the Pontiac and $1,000.00. Having deposited the check and received the proceeds thereof, the Motor Company refused Snyder's demand. Rhea disposed of the Chrysler and applied the proceeds of the sale on the encumbrance.

The lower court refused to submit the issue of fraud to the jury and stated in its opinion that, if any fraud existed, it had been committed by Rhea and not by the appellees. The only alleged misrepresentation was

made by appellee Abbamondi and was an opinion expressed by him concerning Snyder's right to drive the Chrysler before receiving the title, which at that time was in the hands of the holder of the encumbrance. This statement was made after consummation of the contract between Snyder and Rhea and does not meet the standard set forth in *Gerfin v. Colonial Smelting & Refining Company, Inc.,* 374 Pa. 66, 97 A. 2d 71, wherein it is stated that evidence of fraud must be clear and convincing to justify the submission of the question of fraud to the jury. We find no error in the action of the lower court in this regard.

On the question, with which of the parties did appellant contract, the jury found that the appellant had contracted with Rhea and not with appellees. There is sufficient competent evidence to sustain this finding. Nevertheless, appellant now argues that appellee Motor Company was a third party beneficiary to that contract. We find nothing in either the contract or the evidence to establish that fact. A third party beneficiary to a contract comes into existence when it appears in the contract itself that both parties to the contract intended that the third party benefit thereby. *Burke v. North Huntington Township,* 390 Pa. 588, 136 A. 2d 310; *Spires et ux. v. Hanover Fire Insurance Company,* 364 Pa. 52, 70 A. 2d 828. In the present case there were two separate contracts, one between Snyder and Rhea and the other between Rhea and the Motor Company. The Motor Company was not a party to the first contract and became, as a result of Rhea's directions to Snyder, merely a transferee of the consideration passing to Rhea.

Appellant's third theory is, likewise, without merit. The rescission of a negotiable instrument by an infant against a subsequent holder in due course is not permitted by §3-207 of the Uniform Commerical Code,

on which appellant relies. Having received the instrument by negotiation from Rhea for value, in good faith, and without notice that it was overdue or had been dishonored or that there was any defense against it, the Motor Company was a subsequent holder in due course. Section 3-302 of the Code. The jury has found that there were no dealings between Snyder and the appellees.

Appellant's argument that the Motor Company was not a "subsequent" holder in due course is not supported by the evidence. The fact that the check was not manually transferred from Snyder to Rhea and then to the Motor Company would be immaterial under the definition of "delivery" contained in §191 of the Negotiable Instruments Law of 1901, Act of May 16, 1901, P.L. 194, 56 P.S. §491, which provides that transfer of possession may be actual or constructive. Although the Uniform Commercial Code repealed the Negotiable Instruments Law, it nevertheless did not prescribe any new definition of the term delivery. We are of the opinion, therefore, that the established definition should prevail. The generally recognized meaning of "delivery" set forth in Corpus Juris Secundum is as follows: "What constitutes delivery depends largely on the intent of the parties. It is not necessary that delivery should be by manual transfer. A constructive delivery is sufficient if made with the intention of transferring the title, and this rule is recognized by the definition of delivery in Negotiable Instruments Act §191 as the transfer of possession, 'actual or constructive.' " 10 C.J.S. Bills and Notes §78d.

The facts previously stated show clearly the intention of these parties. Together, Snyder and Rhea took the check to the Motor Company, where it was exhibited and where Rhea exercised dominion over it by directing Snyder to hand it over to the Motor Company. Snyder

agreed to this and accepted Rhea's receipt, which acknowledged that Rhea had received the proceeds of the check. This was sufficient to constitute constructive delivery from Snyder to Rhea and "subsequently" from Rhea to the Motor Company.

Orders affirmed.