**Clifford David Crockett CAVINESS, Appellant,**

v.

**ANDES & ROBERTS BROTHERS CONSTRUCTION COMPANY, Respondent.**

No. 26329.

Missouri Court of Appeals, Kansas City District.

April 1, 1974.

William C. Paxton, Independence, for appellant.

Alan B. Slayton, Independence, for respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

The parties submitted this case for determination by the trial court on an agreed statement of facts. The situation so depicted is uncomplicated, though unusual. Plaintiff, appellant here, was an employee of defendant and participated in a payroll saving fund operated by the company, which was available on a voluntary basis to the employees generally. Employees at their discretion could deposit money in this fund, on which defendant would pay 7 per cent or such interest as it ordinarily incurred on loans from other sources. Plaintiff signed an authorization under which $20 per week was deducted from his pay and invested in the payroll saving fund. From the amounts so deposited, he made withdrawals from time to time.

On August 31, 1971, defendant discharged plaintiff. By that date plaintiff had become separated from his wife, who was the daughter of defendant's president. It is rather apparent that the marital discord serves at least in substantial part to explain the discharge.

Promptly after discharge, defendant paid to plaintiff all of his regular salary due. However, on the date of discharge he had a balance of $460 in the payroll saving fund, and this latter sum was not delivered to him. By letter dated September 29,

1971, plaintiff demanded payment of this amount. On October 4, 1971, defendant's president responded by letter, as follows:

"In answer to your letter dated September 27, 1971 I wish to state that I have given this check to your wife, Kathy Caviness. If there are any further questions regarding this matter, it would be best to contact her attorney, Mr. Graham of Independence, Missouri."

The wife, Kathy, filed a divorce suit on September 23, 1971. Plaintiff, on October 8, 1971, filed his petition in this suit, in two counts. Count I prayed damages for the $460 mentioned and for the further sum of $2,090.20 as continuing wages due and owing by reason of § 290.110, RSMo 1969, V.A.M.S. Count II of the petition claimed alternatively the same sum of $460 and in addition punitive damages in the sum of $100,000, plus attorneys' fees.

The whereabouts of the $460 check referred to in defendant's letter dated October 4, 1971, remains undisclosed so far as the record in this case shows, until June 5, 1972. On the latter date, that check was finally delivered to plaintiff.

Judgment was entered by the trial court on July 13, 1972, in which there was set forth the court's findings and grounds of decision. With respect to Count I, the court found that the deductions for the company payroll saving fund did not constitute "wages" within the contemplation of § 290.110 of the statute. With respect to the alternative Count II, the court found that the relationship between the parties was that of debtor and creditor and that "under these circumstances an action will not lie for the conversion of a mere debtor's chose in action." Plaintiff appealed, claiming that both of those rulings by the trial court are erroneous.

### I.

■ Statutory § 290.110, upon which Count I is based, requires every employer to pay the "unpaid wages" of a discharged employee and further provides that if the employer fails to do so within 7 days after written demand, then as a penalty the wages shall continue until paid for a period not to exceed 60 days. The validity of plaintiff's claim under this statute depends upon whether the balance due him in the employer's payroll saving fund constituted "wages".

That deposit cannot qualify under that concept. Plaintiff by his voluntary choice elected to have $20.00 of his wages deducted each week for deposit into the payroll saving fund. When that money was deducted weekly and invested, it was separated and changed in character from wages just as effectively as if the deduction were for the purchase of United States Government Savings Bonds. After the payroll deduction, the sum held by the employer in the payroll saving fund was held in a debtor-creditor relationship, not an employer-employee relationship.

■ If there could be any doubt concerning this analysis, that doubt would have to be resolved in favor of considering the saving balance due to the plaintiff as not being "wages", for the reason that Section 290.110 is a penal statute and must be strictly construed. Monterosso v. St. Louis Globe-Democrat Publishing Co., 368 S.W. 2d 481, 1 c. 488 (Mo.1963); Lotz v. Missouri Distributing Co., 387 S.W.2d 179 (Mo.App.1965).

Accordingly, the trial court correctly ruled that plaintiff was not entitled to recover under Count I.

### II.

The trial court also properly ruled that plaintiff could not recover under Count II. He was, of course, entitled to recover the sum of $460 at the time his petition was originally filed. However, on the following June 5, 1972, that sum was paid to him and the claim to that extent was then satisfied. What is at issue now is plaintiff's

claim that he is entitled to something more, namely the right to a submission of his demand for punitive damages based on the argument that the defendant's sending of the $460 check to plaintiff's wife constituted a conversion of plaintiff's property.

Plaintiff's argument on this branch of the case fails unless a "conversion" occurred. Plaintiff admits, as he must, that there can be no conversion of a mere indebtedness, stating in his brief that "[i]t is certainly conceded that an action will not lie for the conversion of a *mere* debt or chose in action." However, he seeks to escape this rule by contending that the issuance of defendant's check on September 2, 1971, created a special new property right and that the check is properly a subject of conversion.

■ The defect in this argument is that defendant's check never became a valid instrument and never became "property" until the check was delivered to plaintiff on June 5, 1972, many months after the alleged conversion. The law has long and uniformly held that delivery is essential to the validity of a bill or note, and the instrument does not come into existence until delivery and acceptance. Bakelite Co. v. Miller, 372 S.W.2d 867 (Mo.1963); Hackett v. Dennison, 223 Mo.App. 1213, 19 S.W.2d 541 (1929); Gordon v. Raymond, 239 Mo.App. 321, 186 S.W.2d 849, 1 c. 852 (1945). This rule still holds true under the Uniform Commercial Code, 11 Am. Jur.2d, Bills and Notes, § 270, p. 298; Billingsley v. Kelly, 261 Md. 116, 274 A.2d 113 (1971); Snyder v. Town Hill Motors, Inc., 193 Pa.Super. 578, 165 A.2d 293 (1960).

■ The delivery of the check by defendant to plaintiff's wife did not satisfy the requirement that the delivery be made to him. A delivery may, of course, be made to a payee's agent, but under the facts of this case, Kathy Caviness can by no stretch of the imagination be considered as an agent for the plaintiff. Indeed, it was their adversary position due to their separation and marital discord which would soon lead to divorce, which no doubt accounted for plaintiff's discharge. The fact that plaintiff and his wife were in this adversary position is the very reason that plaintiff complains with some justification that defendant's purpose in delivering the check to the wife was to hinder and embarrass him. These facts negate any conclusion that delivery of the check to Kathy Caviness could have the effect of placing that check "under the power and control" of plaintiff as was true in School District of Kansas City v. Sheidley, 138 Mo. 672, 40 S.W. 656, 1 c. 660 (banc 1897). Looked at another way, if Kathy Caviness were in truth plaintiff's agent, then delivery of the check to her could hardly be an act of conversion.

It can more properly be said under the facts of the present case that Kathy Caviness was defendant's agent, rather than plaintiff's agent, which is also consistent with the fact that Kathy Caviness apparently redelivered the check to defendant in June, 1972, when it finally decided to turn that check over to the plaintiff. Certainly the delivery by a maker to his own agent has never been considered a delivery to the payee. 11 Am.Jur.2d, Bills and Notes, § 278, p. 304; 10 C.J.S. Bills and Notes § 78, p. 514.

There being no error, the judgment is affirmed.

All concur.