No. 21349.

HARRY J. HENDRICKSON *v.* SANFORD ALPERT, ET AL.
(412 P.2d 433)

Decided March 28, 1966.

Franklin W. Azar, for plaintiff in error.

Arthur W. Zarlengo, C. Mart Reese, for defendant in error Sanford Alpert.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

We will refer to the parties by name.

Hendrickson instituted an action in the district court of Las Animas County to enjoin the public trustee from selling the former's property under foreclosure proceedings instituted by Alpert. The latter had purchased a $30,000 promissory note which Hendrickson had made to Waco Oil Corporation through its president and alter ego, one Griffith. Security for the note was a $60,000 parcel of improved property owned by Hendrickson and located in Trinidad.

The factual situation surrounding the making of the note and trust deed and delivery to Waco Oil through Griffith; the latter's action in trying to dispose of the note before finally selling it to Alpert for a $5,000 discount; the involvement of many people, including attorneys at the "closing"; and finally the assignment of the note to Alpert and the payment of $25,000 is all so involved and of such inordinate length that to detail the facts would serve no useful purpose and would only tend to unduly prolong this opinion. From the evidence the court found that Griffith and Waco Oil had obtained the note from Hendrickson by fraud and deceit. However, on the sole issue before the court as to whether Alpert was a "good faith" holder of a negotiable instru-

ment in due course, the court found that he was. In its finding the trial court noted that:

"* * * the defendant was unaware of the fraud and deceit practiced upon the plaintiff by A. C. Griffith in the procurement of said note and deed of trust; that Alpert took no part in the negotiations and transactions whereby the plaintiff was fraudulently induced to sign and deliver said note and deed of trust; that he had no notice of any alleged defect in the title of said note and deed of trust thereof or the transfer to Waco Oil Corporation; that the said note and deed of trust were regular, valid and complete on their face; and were negotiable; that the note had not become due when negotiated to Alpert; that the defendant Alpert, in good faith, and without knowledge of any of the claimed infirmities paid $25,000.00 cash for the said note and deed of trust and the same were duly and regularly assigned to him and he became the owner of the note and deed of trust."

Judgment was therefore entered denying the injunctive relief sought.

Although contending that the evidence does not support the court's findings, and asserting that Alpert failed to sustain the burden of proof required of him to show that he purchased the note in good faith without notice of any infirmities, the thrust of Hendrickson's argument is that we should determine, as a matter of law from the totality of the circumstances, that Alpert acted in bad faith in purchasing the Hendrickson note.

 This we decline to do in the face of the conflict in the evidence on some of the matters which are urged in support of Hendrickson's argument. Even as to the matters not in dispute, we believe that reasonable men could differ as to whether Alpert can be charged with bad faith in purchasing the note. Whether the purchaser of a negotiable instrument had knowledge of such facts that his taking of the instrument would amount to bad faith, is normally a question of fact. A concise statement of the law in this regard may be found in *Gramatan*

*National Bank and Trust Co. v. Beecher,* 122 Vt. 366 173 A.2d 163, as follows:

"\* \* \* Neither gross negligence, nor knowledge of suspicious circumstances, nor failure to inquire into the consideration will of themselves, as a matter of law, prevent recovery by a holder of negotiable paper who purchases it in the ordinary course of business. The authorities are however practically unanimous in holding that the existence of such facts may be evidence of bad faith sufficient to take the question to the jury, \* \* \*."

■ The court in sifting the evidence had certain well-defined guidelines in the Colorado law. C.R.S. 1963, 95-1-56, states:

*"What constitutes notice of defect.* — To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

In interpreting the foregoing section, we quoted with approval in *Hukill v. McGinnis,* 70 Colo. 455, 202 Pac. 110, the following from *Merchants' Bank v. McClelland,* 9 Colo. 608, 13 Pac. 723:

"If there is nothing on the face of a negotiable instrument, or in the written indorsement or assignment, to notify the assignee that the instrument was originally given upon an illegal consideration (gambling debts excepted), or obtained through fraud, the assignee who pays value therefor, and takes the same in good faith before maturity, may recover as against the maker. This is true, even though such assignee be in possession of facts or circumstances sufficient to arouse suspicion in the mind of a person of ordinary prudence; and though he is guilty of negligence in not first following up such information for the purpose of discovering the fraud or illegality to which the suspicious circumstances may

point. \* \* \* It (the rule) is founded upon commercial necessity. The untrammeled circulation of these instruments is a matter of supreme importance in the vast field of mercantile transactions. Drafts, bills of exchange and other negotiable instruments take the place of money, and circulate almost as freely. To hold that each assignee must, before accepting them, inquire into each and every suspicious circumstance bearing upon the original execution, or pointing to possible defenses in a suit between the original parties, would produce serious inconveniences to the commercial world. (citing cases)"

For a succinct definition of what constitutes "bad faith" see *Burnham v. Sethman,* 64 Colo. 189, 171 Pac. 884, wherein the following pertinent statement is set forth:

"\* \* \* Bad means evil, something vicious. Bad faith in fact, or mala fides, is the opposite of good faith, and consists in *guilty knowledge,* or *willful ignorance,* showing a vicious or evil mind, \* \* \*." (Emphasis supplied.)

Among the facts and circumstances that were probably persuasive in the mind of the trial court, as trier of the facts, was undisputed evidence that Alpert acted through attorneys, who, in turn, contacted Hendrickson's attorney as well as Griffith's counsel, both of whom were present when the original note and deed of trust were executed. Hendrickson's attorney was present at the closing transaction when Alpert purchased the note, claiming that Griffith had an obligation to Hendrickson to pay his attorney fee as part of the agreement with Hendrickson. Seven hundred fifty dollars of the money paid by Alpert to Waco went to Hendrickson's attorney. Neither inquiry of Hendrickson's attorney nor of Hendrickson himself would have disclosed any infirmities in the note because both believed at the time that the consideration for the note and deed of trust passing from Waco Oil was genuine and not spurious. It was not until several months later

that the fraud practiced by Waco on Hendrickson was discovered. Even after discovery of the fraud Hendrickson promised Alpert that he would pay off the note. A letter was introduced into evidence from Hendrickson's attorney requesting an extension of time and indicating that an effort would be made to discharge the obligation because Hendrickson expected to get the money from Griffith. The foregoing is sufficient to support the determination of the trial court that Alpert did not act in bad faith. Accordingly, on the basis of well settled authority, we cannot disturb the findings of the trial court.

The judgment is affirmed.

MR. JUSTICE MOORE not participating.