BILLINGSLEY *v.* KELLY ET AL.

[No. 317, September Term, 1970.]

*Decided March 2, 1971.*

The cause was submitted on brief to HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

Submitted by *James F. FitzGerald* for appellant.

No brief filed on behalf of appellees.

BARNES, J., delivered the opinion of the Court.

Henry E. Billingsley (Billingsley) joined with Paul J. Kelly and Jack R. Huffner (Appellees or Kelly or Huffner when referred to individually) to form Urban Systems, Inc. (Corporation), a Maryland corporation, in the fall of 1966. The purpose of the Corporation was to procure private and governmental contracts to perform studies of urban problems. Billingsley, Kelly and Huffner each owned a one-third interest in the Corporation and together constituted its board of directors. The Corporation met with less than immediate financial success and became indebted to each of the three principals for unpaid salary. The Corporation had an additional obligation to Billingsley for personal funds he had expended on behalf of the Corporation. On March 11, 1968, the Corporation executed four promissory notes. Two of these notes were made payable to the order of Billingsley; one in the amount of $6,868.81 for unpaid salary; the other in the amount of $16,083.42 for personal expenditures in be-

half of the Corporation. Both of these notes were indorsed by Kelly and Huffner as individual guarantors. A third note made payable to the order of Kelly in the amount of $13,830.98 for unpaid salary was indorsed by Huffner and Billingsley as individual guarantors. A fourth note made payable to the order of Huffner in the amount of $13,-280.98 for unpaid salary was indorsed by Kelly and Billingsley as individual guarantors. Payment on each of the four notes, dated March 11, 1968, was due on demand and each was entitled to 6% interest from July 1, 1967. Having made a fruitless demand for payment from the Corporation as maker and Kelly and Huffner as indorsers by a letter of October 25, 1968, Billingsley sued Kelly and Huffner for the balance due on March 24, 1969. The Circuit Court for Talbot County (J. DeWeese Carter, C. J.), sitting without a jury, found that Kelly and Huffner were liable to Billingsley in the amount claimed but also that Billingsley was liable to Kelly and Huffner on their notes. The trial court determined that the amount due Kelly and Huffner was more than that due Billingsley and thus entered judgment for the Appelles, Kelly and Huffner, by way of recoupment.

At the trial the circumstances surrounding the issuance of the notes were thoroughly explored in the resolution of issues raised as to fraudulent inducement, parol agreements, and the adequacy of the underlying consideration, etc. After weighing all of the evidence, the trial court decided that the notes were valid as written. Since none of these issues has been raised on appeal, there is no need to recount the conflicting descriptions of the transaction.

Billingsley raises four points' on appeal. First, he contends that the introduction of Kelly's note into evidence was limited to the purpose of showing the nature of the March 11, 1968, transaction and not for a claim of recoupment thus prohibiting the trial court's use of the note for purposes of recoupment in its judgment. Secondly, Billingsley contends that since the Appellee, Huffner,

never took possession of the note issued him by the Corporation, such note never became a valid negotiable instrument and thus is not enforceable against him as an indorser. Thirdly, Billingsley contends that he cannot be held liable on either of the Appellees' notes as an indorser when there has been no prior demand upon and dishonor by the Corporation, as maker. Fourthly, Billingsley contends that indorsers are liable to one another in the order of indorsement and since he was the last indorser on each of the Appellees' notes, there is no right of contribution against him to be used for recoupment.

These arguments will be considered in the order raised.

### (1)

The following exchange between the Court and both counsel took place when the Appellees had Kelly's note introduced into evidence.

"(Mr. Fitzgerald) I have no objection to the substitution of a photostat but I will object to this. There is no claim of payment or offset here. They only have a general issue plea and there is no counter claim by these people and I don't think it is admissible under the state of the evidence at this time. They have said this is a U. S. I. note and no showing on the state of the evidence that it is proper to proceed at this time against endorsers, and they are not holding any offset because the liability of an endorser is, at best, a continuing liability.

"(Mr. Hoffman) In answer to that, we are relying on the doctrine of recoupment. It is a simultaneous transaction, all growing out of one transaction and the general issue plea will support all the notes on that, and I have some authority on that if you want it.

"(The Court) One of the points that Mr. Fitzgerald makes is that you have not set up a factual base on which to make the endorsers liable

because you haven't shown any demand on the maker.

"(Mr. Wheeler) I would like to say that the real purpose of introducing the note at this time is to show the nature of the transaction and isn't to make claim.

"(The Court) If that is the basis, we think it is involved very definitely in the total transaction, and for that reason we will admit it in evidence, but we feel that there is merit to the position of Mr. Fitzgerald. Obviously this suit is against these people as endorsers. I think there has to be compliance with the requirements of the Uniform Commercial Code.

"(Mr. Hoffman) I think it is a suit both as principal and endorser referring specifically to the Commercial Code.

"(The Court) He says it is a corporate note and so considered it because the note says on the front U S I and signed by the Vice President and with the corporate seal. It is a serious question whether they appear here as makers. I know that you allege that in your declaration. We have admitted it over objection as part of the defendants' case."

The trial court was hesitant to admit the note for purposes of recoupment before liability of Billingsley on the note as indorser had been demonstrated by a prior demand upon and dishonor by the Corporation as maker. In order to overcome this obstacle, the Appellees changed their proffer. The trial court later determined that Billingsley was liable on the note as an indorser and used it for recoupment against him. Billingsley cites *Fidelity Mut. Life Assoc. v. Ficklin*, 74 Md. 172, 21 A. 680 (1891); *Mutual Life Ins. Co. of Balto. v. Rain*, 108 Md. 353, 70 A. 87 (1908); *Travelers Ins. Co. v. Needle*, 171 Md. 517, 189 A. 216 (1937), for the proposition that the trial court was bound by the Appellees' limited proffer and thus pre-

cluded from using the evidence for purposes of recoupment. These cases are distinguishable from the case at bar which falls within the ambit of the early case of *Emery v. Owings,* 3 Md. 178, 188 (1852) in which it was stated, "When testimony is admitted for a particular purpose, it does not follow that *the party introducing it* may then use it for any object he thinks proper, and if any such attempt is made the court will prevent it upon the application of the opposite party, *where the use attempted is an improper one."* (Emphasis added.) *Mutual Life Insurance Co., supra,* is distinguishable because in that case it was the defendant who sought to use evidence offered by the plaintiff for another purpose. The court held that in order for the defendant to use declarations in a proof of loss statement offered by the plaintiff as admissions against the plaintiff, it would be necessary for the defendant to make an independent offer of such admissions into evidence. *Fidelity Mut. Life Assoc.* and *Travelers Ins. Co., supra,* are distinguishable because the other purpose for which the offering party intended to use the evidence was an improper one. In these cases the plaintiff wanted to use the proof of loss statement to show compliance with the insurance policy for the additional purpose of establishing the loss as a fact. Such evidence has been held incompetent for proof of loss. Here, the evidence was used in behalf of the party introducing it and its use for recoupment was a proper one.

Recoupment as opposed to set-off is allowable under the general issue plea when the claim arises from the same contract or same transaction as the plaintiff's claim and no affirmative relief is sought in excess of plaintiff's claim. Maryland Rule 342; *Holloway v. Chrysler Credit Corp.,* 251 Md. 65, 246 A. 2d 265 (1968) ; *Eisenberg Admin. v. Air Cond., Inc.,* 225 Md. 324, 170 A. 2d 743 (1961) ; *District Agency Co. v. Suburban Delivery Service, Inc.,* 224 Md. 364, 167 A. 2d 874 (1961) ; 2 Poe, *Pleading & Practice* (Sachs Ed. 1970), § 616. No excess relief was granted here but each note does constitute a separate and integral contract inasmuch as it is necessary to take each note in-

dividually and balance it against the validity and performance of the underlying consideration by the named payee in order to determine whether the Corporation as maker would have any defense or offsetting claim for damages against each payee. The trial court determined that there was no such failure in the underlying consideration for the notes. That each note constitutes a separate contract does not preclude use of recoupment among the notes if they can be shown to have arisen from the same transaction. Recoupment was not allowed on independent contracts between the parties in *Molesworth v. Schmidt,* 196 Md. 15, 75 A. 2d 100 (1950) because, as the Court specifically stated, the defendant had failed to show a connection between the two contracts made between same parties on different dates. Here we have the same parties on the same date joining together in alternate combinations as indorsers guaranteeing corporate obligations in the form of promissory notes to each other. Since each of the parties owned a one-third interest in the corporation, they were meeting on equal terms. It is undisputed that Billingsley initially requested that the Corporation issue promissory notes to him in the amount of its indebtedness to him and that the Appellees personally guarantee the notes by indorsement. It was the very concern of the Appellees that in the event of demand on these notes, they would have no means of diminishing the obligation by recourse to the corporate indebtedness to them that they insisted upon the notes issued to them with Billingsley's guaranteeing indorsement, thus the notes are tied together as an outgrowth of the same transaction. Since there was no dispute in regard to the underlying consideration for these notes, Billingsley was not prejudiced by their use for recoupment purposes and the trial court was properly acting within its discretionary power to so use them.

## (2)

All four of the notes were executed in Billingsley's office on March 11, 1968. At that time Kelly had the cor-

porate seal in his office. It was agreed that Billingsley would hold the notes until he obtained the seal and impressed it upon each note after which each of the parties could take possession of his note. Shortly after this was accomplished, Kelly obtained delivery of his note. Huffner, however, never bothered to pick up his note. It is also undisputed that Billingsley retained the notes for the sole purpose of placing the seal on them and that there was no reason why Huffner could not have taken physical possession of his note at any time.

Billingsley contends that since Huffner never took actual delivery and possession of the note which the Appellees had admitted into evidence from Billingsley's possession, such note is a nullity and could not be used by the Court for recoupment. In terms of the Uniform Commercial Code adopted by Maryland in Art. 95B of the Maryland Code, 1964 Replacement Volume, the question comes down to whether or not Huffner can be considered a "holder" of the instrument. Md. Code (1957, 1964 Repl. Vol.), Art. 95B, § 1-201 (20) defines "holder" as "a person who is in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank." Since it is undisputed that Huffner never took actual possession of the note, he could only qualify as a "holder" if construed to be in constructive possession of the note and only if that concept is still viable under the Uniform Commercial Code as adopted in Maryland. *John Hancock Mut. Ins. Co. v. Fidelity Balto. Nat. Bank & Trust Co.*, 212 Md. 506, 129 A. 2d 815 (1957) cited by Billingsley as authority for his position is of no help on this question. In *John Hancock, supra,* an insurance agent submitted false claims in the name of fictitious persons to his company which then drew checks payable to these fictitious persons and sent them to the agent for distribution. Since this case was prior to the enactment of U.C.C. (Code, Art. 95B), § 3-405 (1) (c) and governed by the Negotiable Instruments Law as then codified in Art. 13 of the 1951

Maryland Code, the Court correctly decided that no delivery could have taken place under Maryland law because there existed no payees to take constructively or otherwise. No question of constructive delivery was involved in the case. This Court recognized and applied the concept of constructive delivery in regard to negotiable instruments in *Miller v. Hospelhorn,* 176 Md. 356, 4 A. 2d 728 (1939). Unless changed by the adoption of the Uniform Commercial Code in Maryland, *Miller* still represents the law on the subject in this state. Use of the constructive delivery concept was specifically provided for in the former Negotiable Instruments Law of Maryland which defined "delivery" as the "transfer of possession, actual or constructive, from one person to another." (Md. Code (1957), Art. 13, § 37) The definition of "delivery" in the Uniform Commercial Code as currently enacted in Maryland is as follows: " 'Delivery' with respect to instruments, documents of title, chattel paper or securities means voluntary transfer of possession." The "constructive possession" concept is not specifically mentioned as it was in the prior Negotiable Instruments Law but neither is it specifically negated. Faced with the same question in *Investment Service Co. v. Martin Bros. Container & Timber Products Corp.,* 7 U.C.C. Rptr. Serv. 373 (1970), the Supreme Court of Oregon chose to examine their pre-code decisions applying the "constructive possession" concept to negotiable instruments rather than hold as a matter of statutory interpretation that it could no longer apply under the Code. The Court found that possession by constructive delivery could not be implied in the case before them because in addition to returning the note, the bank in question had also charged back the depositor's account thus clearly showing that the depositor was not intended to be holding the note in behalf of the bank. In the present case, however, it is undisputed that Billingsley was holding the note for Huffner. In response to questions from the trial judge, Billingsley conceded that Huffner's note was intended to be delivered to Huffner. Billingsley never contended that there was any agreement or under-

standing in his own mind or otherwise that Huffner's note was not valid, complete, and irrevocable. He contended that his retention of the note was in accordance with an understanding that he be assured a priority position against the corporate assets; not that there was any condition upon which final execution of the note was contingent. The trial court found against Billingsley on his contention in regard to the existence of a priority agreement. But even if he had met the burden of proof and sustained the existence of such an agreement, it would not affect the conceded validity of the instrument itself. Stringent requirements of delivery and possession in these as well as in gift cases is to avoid fraud by requiring the best possible evidence of intent. If there is any evidence more reliable than delivery and possession on a question such as this, it would have to be the in-court admission of the adverse party. Prudent use of the "constructive delivery" doctrine in the past has apparently worked no great hardship upon the conduct of commercial transactions and there is no reason to believe that it should in the future. It is as probable to infer that the legislature intended to sustain this doctrine by not specifically negating it as it is to infer that the legislature intended to abolish the doctrine by not specifically mentioning it. The Court should not abandon long-established law on such vague and neutral grounds.

It can be seen from Billingsley's own testimony that reception of the notes by him was in his capacity as an individual and constituted a delivery from the corporate maker to him as opposed to no delivery and a mere retention by him in his corporate capacity as maker even though the trial court found against the existence of a priority agreement. In *Miller v. Hospelhorn,* 176 Md. 356, 367, 4 A. 2d 728 (1939), this Court quoted the following with approval:

> "In 8 C. J., p. 204, it is said: 'What constitutes delivery depends largely on the intent of the parties. A constructive delivery is sufficient

> if made with the intention of transferring the title. It is not necessary that delivery should be by manual transfer; and this rule is recognized by the definition of delivery in the negotiable instruments law as the transfer of possession, "actual or constructive".' 'Each case, when it turns on the facts, must stand on its own facts.' 7 *Am. Jur.*, page 809. The final test is, did the indorser of the notes do such acts in reference to them as evidenced an unmistakable intention to pass title to them and thereby relinquish all power and control over them?"

We find that Billingsley's reception of the note from the corporate maker constituted constructive delivery to Huffner giving him constructive possession and thus qualifying him as a holder under U.C.C. (Code, Art. 95B), § 1-201 (20).

Without addressing itself to the question of initial delivery and possession, the trial court held that Huffner could enforce his note under Art. 95B, § 3-804. This section entitles the "owner of an instrument which is lost" to "recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms." The trial court found that, "the defendant Huffner has fully established his ownership in and right to possession of the note payable to his order as of the date this suit was instituted and the reasons why he was deprived of its possession by the plaintiff, and the terms thereof and therefore that he was entitled to assert the rights of a holder thereof under the provisions of the U.C.C. to the same extent as though he had actual possession of the note at the time this suit was instituted." The difficulty with this is that the section by its very terms only applies to "an instrument which is lost" and thus seemingly presupposes prior delivery and possession. A review of cases dealing with this section of the U.C.C. indicates that it has only been employed in such circumstances. *Investment Service Co. v. Martin*

*Brothers Container & Timber Products Corp.,* 7 U.C.C.-Rptr.Serv. 373 (S. Ct. of Oregon 1970) ; *American Cement Corp. v. Century Transit Mix, Inc.,* 3 U.C.C.Rptr.-Serv. 424 (S. Ct. of N. Y. 1966) ; *Chase Manhattan Bank v. Concord Utilities Corp.,* 7 U.C.C.Rptr.Serv. 52 (N. Y. Civ. Ct. 1969) ; *Dluge v. Robinson,* 2 U.C.C.Rptr.Serv. 376 (Pa. Superior Ct. 1964) ; *Hamilton Watch Employees Federal Credit Union v. Retallack,* 5 U.C.C.Rptr.Serv. 739 (Pa. Ct. of Common Pleas 1967).

### (3)

Billingsley's third contention is that he cannot be held liable as an indorser when no demand has been made upon the maker. This same issue was considered by Judge Singley in *Katski v. Boehm,* 249 Md. 568, 580, 241 A. 2d 129 (1968) wherein he stated for the Court:

> "U.C.C. (Code, Art. 95B), § 3-504(1) defines presentment as 'a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder' and the official Comment indicates that the rules regarding presentment have been simplified 'to make it clear that any demand upon the party to pay is a presentment, no matter where or how.' §§ 3-501(1) (b) and 2(a) provide that presentment for payment and notice of dishonor, unless excused, are necessary to charge an endorser but § 3-511 2(a) provides that presentment or notice is entirely excused if waived by the party to be charged. Since each of the notes before us contains such a waiver, the court could have properly found, as a matter of law, that no demand or notice of dishonor was required."

The same reasoning and Code sections apply in the present case because each of the notes here in question contained such waivers. The waiver clause on the face of each note states that, "Each endorser of this note hereby waives presentment, demand, protest and notice of dis-

honor, and consents to any extension of time of payment hereof to the makers without notice to him. In case this note shall not be paid at maturity, each maker and endorser severally promises to pay costs of collection, including a reasonable attorney's fee." Thus demand upon the Corporation was not necessary to charge Billingsley on these notes.

Billingsley then contends that, even conceding the waiver of presentment and notice of dishonor, there was no waiver of actual dishonor. He maintains that he cannot be charged as an indorser when in fact there has been no dishonor by the maker. The short answer to this is that the note has been dishonored by the Corporation under U.C.C. (Code, Art. 95B), § 3-507 (1) (b).

U.C.C. (Code, Art. 95B), § 3-122 (1) (b) states that, "A cause of action against a maker or an acceptor accrues * * * In the case of a demand instrument upon its date or, if no date is stated, on the date of issue." The official comment states that this section "follows the generally accepted rule that action may be brought on a demand note immediately upon issue, without demand, *since presentment is not required* to charge the maker under the original Act or under this Article." (Emphasis added.) U.C.C. (Code, Art. 95B), § 3-504 defines presentment as a "demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder." When the above two sections are read in conjunction with U.C.C. (Code, Art. 95B), § 3-507 (1) (b) which states that, "An instrument is dishonored when * * * Presentment is excused and the instrument is not duly accepted or paid", it can be seen that the Appellees' notes were in a state of dishonor since the Corporation had not made payment on them. The trial court was correct in holding these notes enforceable against the Appellant as an indorser.

### (4)

The trial court found that Billingsley and Kelly were jointly and severally liable to Huffner for the face amount

of Huffner's note and that Billingsley and Huffner were jointly and severally liable to Kelly on the face amount of his note. The lower court reasoned that Kelly had a right of contribution from Billingsley for one-half the face value of Huffner's note and that Huffner had a right of contribution against Billingsley for one-half the face amount of Kelly's note, citing *Hesser v. First National Bank*, 159 Md. 251, 150 A. 723 (1930) and 5 M.L.E. *Contribution* § 5. Finding this combined amount to be in excess of the $22,805.70 due Billingsley, the court allowed a combined recoupment of $22,805.70.

Billingsley recognizes the joint and several liability of the indorsers to the payee of the respective notes under U.C.C. (Code, Art. 95B), § 3-118 (e) but not joint and several liability between the indorsers themselves. He contends that U.C.C. (Code, Art. 95B, § 3-414 (2) is controlling as between the indorsers and makes them "liable to one another in the order in which they indorse." Thus, he concludes that he is not liable to the other indorser on these notes since he was the last to indorse in each instance. That this section does not apply to the circumstances before us is made clear by U.C.C. (Code, Art. 95B), § 3-414 (1) which states that, "unless the indorsement otherwise specifies (as by such words as 'without recourse') every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser *who takes it up*, even though the indorser who takes it up was not obligated to do so." (Emphasis added.) Both of the indorsers in this instance are liable to the payees. There is no liability to subsequent indorsers here because no subsequent indorsers took up the instrument. Here both indorsers signed simultaneously as sureties not as transferors. Both are jointly and severally liable to the payees and consequently liable to each other for half the face value of the notes by way of contribution.

The trial court computed the amount due Billingsley as $16,083.42 minus $3,000 that had been previously paid

on account or $13,083.42 plus 6% interest from March 11, 1968, of $1,870.73 on the first note and $6,868.81 plus 6% interest from March 11, 1968, of $982.24 on the second note for a total of $22,805.40.[1] It found that Kelly and Huffner each would be ultimately responsible for $11,402.70 because of their rights of contribution against one another. It then found that Huffner's and Billingsley's liability to Kelly on his note was $13,830.98 plus 6% interest from July 1, 1967, of $2,558.73 for a total of $16,320.55. There appears to be an error in the addition of this figure which should read $16,389.71. It then found that Kelly's and Billingsley's liability to Huffner on this note was $13,280.98 plus 6% interest from July 1, 1967, of $2,356.98 for a total of $15,637.96. At this point, the trial court apparently lumped the figures together and found that the amount due Billingsley was exceeded by his liability on the Appellees' notes and thus allowed full recoupment and entered judgment for the Appellees. The trial court's computation of damages has not been challenged on appeal, consequently we do not find it necessary to review this aspect of the trial court's decision.

> *Judgment affirmed, the appellant to pay costs.*

---

1. Appellant only requested interest from March 11, 1968, in his declaration and it was on that basis that such interest was allowed even though the notes themselves authorized interest from July 1, 1967.