**Clinton GEORG and Freestyle Sports Marketing, Inc., Petitioners**

v.

**METRO FIXTURES CONTRACTORS, INC., Respondent.**

No. 07SC26.

Supreme Court of Colorado, En Banc.

March 17, 2008.

---

Quinn & Coles, P.C., D. Bruce Coles, Denver, Colorado, Attorneys for Petitioners.

Solomon Pearl Blum Heymann & Stich LLP, Bruce E. Rohde, Denver, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari in this case to address an issue of first impression in Colorado regarding whether under sections 4–1–201(b)(20) and 4–3–302, C.R.S. (2007), Colorado's codification of the Uniform Commercial Code ("UCC"), a person can be a holder of a negotiable instrument entitled to holder in due course status under a theory of constructive possession of a negotiable instrument.[1] The court of appeals partially reversed the trial court's grant of summary judgment in favor of Freestyle Sports Marketing, Inc. ("Freestyle"), ruling that Freestyle was not a holder in due course because it was not a holder who had actual possession of the negotiable instrument at issue in this action.

We hold that, under the facts of this case, Freestyle had constructive possession of the check and qualified as a holder in due course under sections 4–3–302 and 4–3–306, C.R.S. (2007), of Colorado's UCC. Accordingly, we reverse the judgment of the court of appeals and remand with directions that the court of appeals return this case to the district court for entry of judgment in favor of Freestyle.

## I.

Freestyle employed Cassandra Demery as a bookkeeper for several years before it discovered that Demery had embezzled over $200,000 for personal use and had failed to pay, on Freestyle's behalf, approximately $240,000 in state and federal employment taxes. Freestyle terminated Demery's employment, demanded that she repay Free-

style, and threatened to notify the authorities if she did not.

After leaving Freestyle, Demery went to work as a bookkeeper at Metro Fixtures Contractors, Inc. ("Metro"), a company owned by her parents. Demery's bookkeeping position at Metro included balancing the accounting books, invoicing customers, and paying outstanding bills on behalf of the company. In her position as bookkeeper, Demery wrote a check from Metro's bank account and made it payable to Freestyle in the amount of $189,000. Demery wrote "for deposit only" on the back of the check as well as Freestyle's account number, filled out a deposit form, and deposited the check in Freestyle's bank account.

Demery then informed Clinton Georg, Freestyle's president, by phone, that she had obtained a loan from her family to repay Freestyle and had deposited the funds into Freestyle's account. After Demery's phone call, Georg called his bank and confirmed the deposit of the funds into Freestyle's account. Georg subsequently used the deposited funds for payment of Freestyle's delinquent employment taxes.

After two years, Metro uncovered the transaction instigated by Demery and filed suit against Georg and Freestyle claiming theft, conversion, aiding and abetting a breach of fiduciary duty, conspiracy, and unjust enrichment. Metro alleged that it had not given Demery a loan or permission to write and deposit a check in the amount of $189,000 into Freestyle's bank account.

Freestyle moved for summary judgment, contending that it qualified as a holder in due course under sections 4–3–302 and 4–3–306. The trial court agreed that Freestyle was a holder in due course and granted the motion.

Metro appealed and the court of appeals partially reversed. The court of appeals held that Freestyle could not have been a holder in due course because it was not a holder with actual possession of the check. Freestyle then appealed to us arguing that it had

---

1. We granted certiorari on the following issue: Whether, under C.R.S. 4–1–201(b)(20) and 4–3–302, a person can be a "holder" of a nego-

tiable instrument entitled to "holder in due course" status under a theory of constructive possession of a negotiable instrument.

constructive possession of the instrument when the check was deposited at its bank.

## II.

We hold, under the facts of this case, that Freestyle had constructive possession of the check and qualified as a holder in due course under sections 4–3–302 and 4–3–306 of Colorado's UCC.

## A.

### Standard of Review

Under C.R.C.P. 56(c), summary judgment may be granted if there is no genuine contested issue of material fact and the moving party is entitled to judgment as a matter of law. We review a grant of summary judgment de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo.1995).

With regard to whether Freestyle was a holder in due course by constructive possession of the check, the trial court found that no contested material facts were in dispute and that Freestyle was a holder in due course under the applicable provisions of Colorado's UCC.

The court of appeals accepted the trial court's finding that no contested issue of material fact existed. However, the court of appeals partially set aside the trial court's judgment in favor of Freestyle, reasoning that Freestyle lacked actual possession of the check and therefore did not qualify as a holder in due course.

If Freestyle is a holder in due course under section 4–3–306, it takes free of Metro's claims. *Flatiron Linen, Inc. v. First Am. State Bank*, 23 P.3d 1209, 1212 (Colo. 2001) (discussing the availability of defenses to the payment of negotiable instruments under the UCC and the different defenses for a holder in due course and a holder not in due course); *La Junta State Bank v. Travis*, 727 P.2d 48, 51 (Colo.1986) (noting that a holder in due course takes the instrument free from all claims to it).

Thus, whether Freestyle qualifies for holder in due course status under sections 4–1–201(b)(20) and 4–3–302, by constructive possession of the check, is a question of law that we review de novo. *See Evans v. Romer*, 854 P.2d 1270, 1274–75 (Colo.1993). When a Colorado statute is patterned after a model code, as the Colorado statute is on the UCC, we may draw upon available persuasive authority in reaching our decision. *See West v. Roberts*, 143 P.3d 1037, 1041 (Colo.2006) (citing *Szaloczi v. John R. Behrmann Revocable Trust*, 90 P.3d 835, 838–39 (Colo.2004)).

## B.

### Holder in Due Course

The Colorado General Assembly adopted Colorado's UCC in 1965. *Id.* at 1044. Section 4–1–103, C.R.S. (2007), states that the purposes of Colorado's UCC are to: (1) simplify, clarify, and modernize the law governing commercial transactions; (2) permit continued expansion of commercial transactions; and (3) make uniform the law among jurisdictions. The statute controls when it displaces preexisting principles of law and equity. *See* § 4–1–103(b), C.R.S. (2007); *see also Clancy Sys. Int'l, Inc. v. Salazar*, 177 P.3d 1235, 1237 (Colo.2008).

A check is a negotiable instrument. *See* § 4–3–104, C.R.S. (2007). The holder in due course doctrine is designed to encourage the transfer and usage of checks and facilitate the flow of capital. James J. White & Robert S. Summers, *Uniform Commercial Code* § 17–1, 150 (4th ed.1995). An entity may qualify as a holder in due course even if the instrument at issue may have passed through the hands of a thief. *Id.* at § 17–3, 152–53 ("The holder in due course is one of the few purchasers in Anglo–Saxon jurisprudence who may derive a good title from a chain of title that includes a thief in its links.").

A holder in due course must meet five conditions: (1) be a holder;[2] (2) of a negotia-

---

2. Section 4–1–201(b)(20) addresses the definition of a holder:

 "Holder" means:

(A) The person in possession of a negotiable instrument that is payable either to bearer or

ble instrument [3] who took it; (3) for value; [4] (4) in good faith; [5] (5) without notice of certain problems with the instrument.[6] *Id.* at § 17–2, 151–52.

To be a holder one must meet the two conditions in section 4–1–201(b)(20): (1) he or she must have possession (2) of an instrument drawn, issued, or indorsed to him or her. *Id.* at § 17–3, 152. Possession is an element designed to prevent two or more claimants from qualifying as holders who could take free of the other party's claim of ownership. 6 William D. Hawkland & Lary Lawrence, *Uniform Commercial Code Series*, § 3–301:3 (1999). With rare exceptions, those claiming to be holders have physical ownership of the instrument in question. White & Summers, *supra*, at § 17–3, 152.

■ An otherwise authorized signature on a negotiable instrument is not converted into an unauthorized forgery when an agent, authorized to sign negotiable instruments in his principal's name, abuses that authority by negotiating the instrument to a holder in due course for the agent's own personal benefit. *Willey v. Mayer*, 876 P.2d 1260, 1265 (Colo. 1994) (holding that when an agent has actual authority to sign a negotiable instrument but acts with an improper purpose or without authorization in transferring an instrument

to a third party, the principal is liable on the instrument to a holder in due course); *see also* § 4–3–402, C.R.S. (2007); *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 474 (Colo.1995).

## C.

### Constructive Possession

■ Section 4–4–201(a), C.R.S. (2007), states that a collecting bank "is an agent or sub-agent of the owner of the item." Further, the statute states, "This provision applies regardless of the form of indorsement or lack of indorsement...." *Id.* A check payable to a party and deposited in that party's account makes the party the "owner" of the check under the UCC. *See Mercantile Bank & Trust Co. v. Hunter*, 31 Colo.App. 200, 501 P.2d 486, 487 (1972). Further, the White & Summers treatise on the UCC speaks to a collecting bank as an agent for the owner's possession:

> Sometimes the one claiming to be a holder in due course will not have possession of the instrument at the time of the suit. When a collecting bank holds the check, the solution is simple, for section 4–201 makes that bank the agent of the owner of the check. *Under traditional analysis, the agent's possession would be the own-*

to an identified person that is the person in possession;

(B) The person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession;

(C) The person in control of a negotiable electronic document of title.

3. Section 4–3–104(a), C.R.S. (2007), states that "a negotiable instrument means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order ...."

4. Section 4–3–303, C.R.S. (2007), defines value as follows:

(a) an instrument is issued or transferred for value if:

(1) the instrument is issued or transferred for a promise of performance, to the extent the promise has been performed;

(2) the transferee acquires a security interest or other lien in the instrument other than a lien obtained by judicial proceedings;

(3) the instrument is issued or transferred as payment of, or as security for, an antecedent

claim against any person, whether or not the claim is due;

(4) the instrument is issued or transferred in exchange for a negotiable instrument; or

(5) the instrument is issued or transferred in exchange for the incurring of an irrevocable obligation to a third party by the person taking the instrument.

5. Good faith is defined as "honesty in fact" and the observance of reasonable commercial standards in fair dealing. *See* § 4–1–201(b)(19).

6. A person takes without notice if, under section 4–3–302(2), he or she took the instrument:

(iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument ... (vi) without notice that any party has a defense or a claim in recoupment ....

er's possession and thus the owner would have "possession."

§ 17–3, 153 (emphasis added).

Thus, there are circumstances wherein requiring actual physical possession of the instrument would be problematic and constructive possession applies. Hawkland & Lawrence, *supra*, at § 3–301:3.[7] Nevertheless, a determination of constructive possession should occur only when delivery is clearly for an identifiable person under circumstances excluding any other party as a holder in due course. *Id.*

Other jurisdictions have recognized constructive possession as qualifying under the UCC for holder in due course purposes. In *Depew Development Inc. v. AT & A Trucking Corp.*, 210 A.D.2d 974, 621 N.Y.S.2d 242, 242 (N.Y.App.Div.1994), a case remarkably similar to the one before us, the court found a defendant to be a holder in due course when an accountant deposited a check directly into the defendant's bank account rather than first delivering it to the defendant. In *Scheid v. Shields*, 269 Or. 236, 524 P.2d 1209, 1211 (1974), the Oregon Supreme Court said that a plaintiff could maintain an action even though he was not in actual possession of the instrument, thereby narrowing its prior decision in *Investment Service Co. v. Martin Bros. Container & Timber Products Corp.*, 255 Or. 192, 465 P.2d 868 (1970).

Many states have not had the opportunity to address the issue of constructive possession under the UCC. However, decisions in six other jurisdictions, in addition to New York and Oregon, have recognized the sufficiency of constructive possession in relation to being a holder in due course. *See Midfirst Bank, SSB v. C.W. Haynes & Co., Inc.*, 893 F.Supp. 1304, 1314–15 (D.S.C.1994); *Bankers Trust v. 236 Beltway Inv.*, 865 F.Supp. 1186, 1195 (E.D.Va.1994); *Schranz v. I.L. Grossman, Inc.*, 90 Ill.App.3d 507, 45 Ill.Dec. 654, 412 N.E.2d 1378, 1386 (1980); *Lazidis v. Goidl*, 564 S.W.2d 453, 455 (Tex. Civ.App.1978); *Billingsley v. Kelly*, 261 Md. 116, 274 A.2d 113, 117–18 (1971); *Snyder v. Town Hill Motors, Inc.*, 193 Pa.Super. 578,

165 A.2d 293, 295 (1960). In *Billingsley*, Maryland's Court of Appeals aptly held that, when recognizing constructive possession in relation to whether a negotiable instrument was delivered, the "prudent use of the constructive delivery doctrine has not worked a great hardship upon the conduct of commercial transactions." 274 A.2d at 118.

## D.

### Application to this Case

 In the case before us, Demery was Metro's agent, specifically its employee. As a bookkeeper for Metro, Demery's authority included the power to write checks on Metro's behalf. Despite the fact that Metro did not specifically authorize Demery to write a check to Freestyle, Metro placed her in a position to do so. Subsequently, Demery informed Freestyle that she had obtained authority from Metro's owners, her parents, to issue the check and had directly deposited the funds into Freestyle's account. Freestyle verified with its bank the deposit of these funds into its account and then, relying on the availability of those funds, paid the delinquent taxes to the state and federal authorities.

The court of appeals held that Freestyle could not be a holder in due course because it lacked possession of the check. However, this is too narrow a reading of section 4–3–302, which includes circumstances where the instrument does not bear apparent evidence of forgery and the person to whom the instrument is drawn took the instrument for value, in good faith, and without notice that it contained an unauthorized signature. Section 4–3–302 states:

(a) Subject to subsection (c) of this section and section 4–3–106(d) "holder in due course" means the holder of an instrument if:

(1) The *instrument* when issued or negotiated to the holder *does not bear such apparent evidence of forgery* or alteration or is not otherwise so irregular or incom-

---

7. The UCC treatise provides an example of a scenario where the purchaser has the right to obtain immediate possession of an instrument left with a third party. Hawkland & Lawrence, *supra*, at § 3–301:3.

plete as to call into question its authenticity; and

(2) *The holder took the instrument (i) for value, (ii) in good faith,* (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) *without notice that the instrument contains an unauthorized signature* or has been altered, (v) without notice of any claim to the instrument described in section 4–3–306, and (vi) without notice that any party has a defense or claim in recoupment described in section 4–3–305(a).

(Emphasis added).

The trial court found that Freestyle was a holder in due course based on the undisputed facts of this case.[8] Demery delivered the check by depositing it into Freestyle's bank account. Section 4–1–201(b)(14), C.R.S. (2007) defines delivery with respect to an instrument as a voluntary transfer of possession. Two elements are required for delivery of an instrument: (1) intent of the transferor to transfer possession of an instrument, and (2) the actual transfer of the instrument. Hawkland & Lawrence, *supra*, at § 3–105:2 (observing that courts have found the instrument was delivered even before it reached the transferee's possession by utilizing concepts of constructive possession and constructive delivery).

However, Metro counters that the bank was not Freestyle's agent with respect to the collection of a "stolen instrument" because under the UCC, a collecting bank is only the agent for an owner of an instrument and, according to Metro, Freestyle did not own the check. But Metro's argument is contrary to prior Colorado law defining the term "owner" in relation to negotiable instruments such as checks. An otherwise authorized signature on a negotiable instrument is not converted into an unauthorized forgery when an agent, authorized to sign negotiable instruments in his principal's name, abuses that authority by negotiating the instrument to a holder in due course for the agent's own personal benefit. *Willey*, 876 P.2d at 1265.

A check payable to a party and deposited in that party's account makes it the "owner" of the check under the UCC. *See Mercantile Bank & Trust Co.*, 501 P.2d at 487.

While Metro claims Freestyle was not a holder, it does not simultaneously argue that it was a competing holder. There is no other possible holder under the facts of this case. Metro's agent made out the check to Freestyle, wrote the deposit receipt to Freestyle, and delivered the check by depositing it into Freestyle's bank account. Thus, Freestyle had constructive possession of this instrument and qualifies as a holder under section 4–1–201(b)(20).

■ Freestyle was not only a holder under the facts of this case, it was a holder in due course. A note containing an unconditional promise to pay a fixed sum on a definite date is a negotiable instrument. *Haberl v. Bigelow*, 855 P.2d 1368, 1372 (Colo.1993). Here, the check was made out to Freestyle with the unconditional promise to pay the fixed sum of $189,000 on January 4, 1999.

■ Freestyle argues that under section 4–3–303(a)(3), the instrument was issued as payment for Demery's outstanding debt to Freestyle. Metro does not contest that Demery embezzled funds from Freestyle and therefore owed Freestyle funds; rather, it asserts that it did not authorize Demery to issue the check. A pre-existing debt is sufficient consideration. *Premier Farm Credit, PCA v. W–Cattle, LLC*, 155 P.3d 504, 520 (Colo.App.2006). Thus, Freestyle took the check for value.

■ Freestyle acted in good faith. Bad faith for the holder in due course standard means guilty knowledge or willful ignorance. *Hendrickson v. Alpert*, 159 Colo. 463, 467, 412 P.2d 433, 435 (1966). Here, Freestyle lacked guilty knowledge or willful ignorance. The record contains no facts asserted by Metro that, if proven, would support a bad faith claim. To the contrary, Demery told Freestyle that she had obtained a loan from her family, the owners of Metro, to repay the funds she owed. The trial court found that

---

**8.** The trial court specifically stated, "The Court adopts by reference [Freestyle's] recitation of holder in due course and its applications of the facts of this case ...."

Freestyle did not have a basis for knowing this information was false.

Finally, Freestyle had no notice that Demery lacked authority to issue the check or that it was forged. The undisputed facts are that Demery was Metro's bookkeeper and had authority to issue the check. Metro simply insinuates that, because its employee stole from Freestyle, Freestyle should have been on notice that she was also stealing from Metro. However, Metro was in the best position to protect itself against Demery's action. When the instrument is regular on its face, we have held that there is no duty to inquire into possible defenses, absent circumstances that reveal a deliberate desire to evade knowledge:

> [W]here an instrument is regular on its face, there is no duty to inquire as to possible defenses unless the circumstances of which the holder has knowledge are of such a nature that failure to inquire reveals a deliberate desire to evade knowledge because of a fear that investigation will disclose the existence of a defense.

*Money Mart Check Cashing Ctr., Inc. v. Epicycle Corp.*, 667 P.2d 1372, 1374 (Colo. 1983). Metro's owner, Demery's father, testified that he had no reason to believe Freestyle knew that the check had been forged. Demery also testified that she had no reason to believe Freestyle knew that the check was forged.

Application of Colorado's UCC can result in loss to an innocent party in favor of a holder in due course. *West*, 143 P.3d at 1045. However, an important policy objective of the statute is to protect the party least able to protect himself or herself. *Id.* "[W]here one of two innocent parties must suffer because of the wrongdoing of a third person, the loss must fall on the party who has by his conduct created the circumstances which enabled the third party to perpetuate the wrong." *Id.* at 1045–46.

Reasons to place the risk on the principal of an agent in commercial transactions include: (1) the increased incentive for a principal to exercise care in selecting agents; (2) the fact that the principal is in a better position to supervise the actions of the agent; and (3) the fact that the principal bears the fruit of a principal/agent relationship. *Willey*, 876 P.2d at 1266.

Applied to this case, Demery acted as a bookkeeper for Metro for several years. Metro was in the best position to have instituted internal procedures and mechanisms regarding the company's accounting. Attesting to its lack of internal procedure, Metro did not uncover the embezzlement until two years after Demery deposited the check into Freestyle's bank account. Freestyle was not in a position, as a third party, to dictate Metro's internal control procedures to prevent employee theft.

Colorado's UCC intends to promote reliability on issued instruments, not to undermine their efficacy by placing the burden on the person to whom it is issued to determine a check's validity. Metro's recourse is not against Freestyle, but rather against its agent employee for breaching her fiduciary duty to the company. *See Holter v. Moore and Co.*, 681 P.2d 962, 966 (Colo.App.1983).

Having reviewed the holder in due course elements in light of the undisputed facts of the case, we determine that Freestyle was a holder with constructive possession of a negotiable instrument, which was given for value and taken in good faith without notice of a forgery or an unauthorized signature.

### III.

Accordingly, we reverse the judgment of the court of appeals and remand with directions that the court of appeals return this case to the district court for entry of judgment in favor of Freestyle.