**Earl GLENWRIGHT, Plaintiff–Appellant,**

v.

**ST. JAMES PLACE CONDOMINIUM ASSOCIATION, a Colorado nonprofit corporation, Defendant–Appellee.**

No. 07CA0727.

Colorado Court of Appeals, Div. IV.

Oct. 16, 2008.

Fairfield and Woods, P.C., Brent T. Johnson, Denver, Colorado, for Plaintiff–Appellant.

Goodman and Wallace, P.C., Kerry H. Wallace, Edwards, Colorado, for Defendant–Appellee.

Opinion by Judge CRISWELL.*

Plaintiff, Earl Glenwright, a unit owner in a common interest community in Eagle County managed by defendant, St. James Place Condominium Association, appeals from the summary judgment that denied him the right to review certain records and awarded attorney fees to the Association. He argues that the trial court erroneously concluded that the Association was not required to produce records which it did not create and which it did not have in its possession. While we generally agree that an association must produce relevant records owned by it, even if they are in the possession of its agent, we also conclude that the record here is such that the entry of summary judgment was inappropriate. Hence, we reverse that judgment and remand for further proceedings.

The common interest community in which plaintiff owns his unit consists of some 108 residential units and 14 commercial units. The Association is charged with managing the property pursuant to the condominium declaration. Plaintiff alleges that the community was developed by the Vail Corporation and that a majority of the board of directors of the Association is still appointed by the developer.

To fulfill its management responsibilities, the Association has entered into a management agreement with Vail/Beaver Creek Resort Properties, Inc., sometimes referred to in the trial court by its association as "The Vail Corporation, d/b/a Vail Resorts Management Company" (manager), which plaintiff alleges is wholly owned by the developer. Under this management agreement, only a portion of which is in the record, the Association has delegated to the manager all of "the powers and duties of the Association," except those that are "specifically required to be exercised by" the Association's board of directors. In return, the manager has agreed, among other things, to "[t]ake such action as may be necessary to comply with all laws, statutes, ordinances, rules and regulations of all appropriate governmental authorities." One of the laws and statutes setting forth the Association's requirements is the Colorado Common Interest Ownership Act (CCIOA), sections 38–33.3–101 to–319, C.R.S.2008.

Pursuant to this agreement, the manager is empowered to enter into contracts in the Association's name and to hire such employees as might be required to perform its obligations under the agreement. The compensation paid to these employees "in connection with this Agreement" is "fully reimbursable to [the manager] by the Association." In addition, all of the manager's out-of-pocket expenses are reimbursable to it.

Should the Association find any employee hired by the manager to be "unnecessary or undesirable," the Association can give written notice of that finding, and if the manager cannot satisfy the Association with respect to that employee, the Association can require the employee's replacement.

Not less than ninety days before the end of a fiscal year, the manager is required to submit to the Association a proposed budget for the coming year. To facilitate the preparation of this budget, the Association is to provide to the manager written guidelines respecting, among other things, the "frequency and levels of housekeeping services to be provided" to the unit owners. Once the Association approves the budget, that budget becomes the basis for the manager to incur expenses for the ensuing year and the basis for assessments against unit owners to be levied by the Association.

Finally, that portion of the management agreement provided to the trial court reflects that the manager must maintain all records required by the "Association Documents and

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

this Agreement," that all "such records shall be the property of the Association," and that they are to be available for inspection by any representative designated by the Association. Because the entire management agreement is not in this record, it is not possible to determine whether the phrase "Association Documents" refers to a part of the agreement that is not in the record or whether the word, Documents, was intended to refer to the Association's declaration, and other governing documents. Nevertheless, this portion of the management agreement also provides that the manager is to "maintain and own certain records," including those related to the "rental of residential units and other records related to this Agreement, which shall not be the Association's property."

However, there is nothing in the present record that further designates or describes the records that are to be owned by the Association or those to be owned by the manager.

Plaintiff has questioned whether the amount assessed the various unit owners for housekeeping services is reasonably related to the actual cost of providing those services. He alleges that, as early as 1998, the assessments for such services exceeded the cost thereof by an amount approaching a quarter of a million dollars.

Hence, in 2003, plaintiff requested that, pursuant to section 38–33.3–317, as it then existed, ch. 283, sec. 1, 1991 Colo. Sess. Laws 1756, he be allowed to inspect certain "housekeeping records." The Association alleges that it had obtained from the manager the records requested for years 2001 and 2002 and provided them to plaintiff pursuant to an agreement with him. In accordance with this agreement, the terms of which are in dispute, plaintiff dismissed his 2003 complaint with prejudice.

In 2005, plaintiff again asked to review these housekeeping records, this time for the years 2003, 2004, and 2005. When the Association refused his request, plaintiff initiated this action, alleging that "the Association stores, and maintains daily housekeeping records for the purpose of tracking housekeeping services and billings provided to its unit owners," and seeking declaratory and injunctive relief under both section 38–33.3–317 and an agreement allegedly made by the Association upon the dismissal of the former litigation.

In this case, the Association alleges that it issued a subpoena to the manager for production of the housekeeping records for the years 2003, 2004, and 2005 and provided them to plaintiff. Plaintiff denies receiving at least a portion of these records, and the trial court noted that the Association had not contested plaintiff's denial in this respect.

The Association ultimately moved for summary judgment, supported by affidavits from its president and a representative of the manager. Each of these affidavits asserted that the housekeeping records reflect the cleaning activities in each unit, but that they are not used in preparation of the budget for the Association or for other financial purposes. In addition, the Association alleged that it has no access to these records.

In contrast, plaintiff presented an affidavit asserting that all of the Association's records, including even the minutes of its meetings, its newsletters, and its website are maintained by the manager. He also averred that certain unit owners prepay the Association for standard housekeeping services and that the Association's budget for such services includes the amount of these prepayments, as well as an estimate for additional requested services. The unit owners are then billed for such services at rates based on the size of the unit and the nature of the services provided. All housekeeping charges, he swears, are billed and calculated by the manager on behalf of the Association.

Based upon the foregoing, the trial court credited the information in the Association's affidavit and rejected the facts asserted by plaintiff. It then concluded that, because the Association did not create or possess the records at issue, section 38–33.3.–317 did not require the Association to produce them. It noted, however, that, because the manager was the Association's agent, plaintiff might be able to require that entity to produce them. Consequently, the court granted the Association's motion for summary judgment, dismissed plaintiff's complaint, and awarded

the Association some $24,000 in attorney fees, pursuant to section 38–33.3–123, C.R.S. 2008.

Plaintiff appeals from this judgment of dismissal and the attorney fees award.

## I. Standard of Review

We review the grant of a summary judgment de novo. *Georg v. Metro Fixtures Contractors, Inc.*, 178 P.3d 1209, 1212 (Colo. 2008). Such a judgment is appropriate only if the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *W. Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481 (Colo.2002). In determining whether summary judgment is proper, the nonmoving party is given the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts must be resolved against the moving party. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo.2007).

## II. Association Records

Plaintiff contends that the district court erred in concluding that, because the Association did not actually create or keep the records sought by plaintiff, former section 38–33.3–317 did not require the Association to make the records available to him. We agree. We conclude, rather, that the records referred to by former section 38–33.3–317 include records owned by the Association and maintained by its agent. However, because the question whether the Association owns the requested housekeeping records cannot be resolved on this record, we also conclude that the trial court erred in entering its summary judgment.

### A. Former Section 38–33.3–317

Statutory interpretation is a question of law that we review de novo. *Francis ex rel. Goodridge v. Dahl*, 107 P.3d 1171, 1176 (Colo. App.2005). In construing a statute, our primary duty is to give effect to the intent of the General Assembly. *Id.* To determine that intent, courts look to the statutory language, giving words or phrases their commonly accepted meaning. *Id.* "If the statuto-

ry language is clear, we apply the plain and ordinary meaning of the provision." *People v. Weiss*, 133 P.3d 1180, 1184 (Colo.2006). We must read and consider a statute as a whole "to give consistent, harmonious, and sensible effect to all of its parts." *People v. Hernandez*, 160 P.3d 263, 264 (Colo.App.2007)(quoting *Farmers Reservoir & Irrigation Co. v. City of Golden*, 113 P.3d 119, 130 (Colo.2005)), *aff'd*, 176 P.3d 746 (Colo.2008). We give effect to the plain meaning of the statute's words and phrases unless the result is absurd or unconstitutional. *Rodriguez v. Schutt*, 914 P.2d 921, 925 (Colo.1996); *Sperry v. Field*, 186 P.3d 133, 137 (Colo.App.2008)(*cert. granted* Sept. 2, 2008).

Here, plaintiff contends that the nature of the records required to be made available under former section 38–33.3–317 includes records an association owns, but which are created and maintained by the association's managing agent. The pertinent statute provided:

> The association shall keep financial records sufficiently detailed to enable the association to comply with section 38–33.3–316(8) concerning statements of unpaid assessments. *All financial and other records* shall be made reasonably available for examination by any unit owner. . . .

Ch. 283, sec. 1, § 38–33.3–317, 1991 Colo. Sess. Laws 1756 (emphasis added) (now codified as amended at § 38–33.3–317, C.R.S. 2008); *cf.* § 38–33.3–317(2)(a), C.R.S.2008 (subject to certain exceptions, "all financial and other records shall be made reasonably available for examination and copying by any unit owner").

Plaintiff relies primarily on the broad phrase in the second sentence, "[a]ll financial and other records." He argues that this provision includes records owned by an association, but maintained by its managing agent.

We begin by reading the pertinent phrase within the context of the entire former section 38–33.3–317. *See Hernandez*, 160 P.3d at 264. While the first sentence of this section refers only to an association's financial records, the next sentence refers to "[a]ll finan-

cial and other records." Given this expansive language, therefore, we conclude that any record owned or possessed by an association clearly falls within the plain and ordinary meaning of the phrase "[a]ll financial and other records." Likewise, a record in the possession of an association's agent is an "other record" for this purpose, if that record reflects the activity of the agent in performing any of the association's powers or responsibilities under either the CCIOA, the association's declaration or by-laws, or its agreement with that agent.

As applied here, therefore, if the "housekeeping records" requested by plaintiff were created, used, received, or maintained by the manager in the manager's performance of the Association's statutory or contractual rights or duties, former section 38–33.3–317 would require their production for plaintiff's inspection. And this would be particularly true if the management agreement recognizes that these records are among those "owned" by the Association.

Further, the Association's reliance upon the Colorado Revised Nonprofit Corporation Act, sections 7–121–101 to –601, C.R.S.2008, is misplaced. That act is explicitly inapplicable to the extent that it conflicts with the CCIOA. § 38–33.3–319, C.R.S.2008.

### B. Housekeeping Records

In light of this conclusion, we must then determine whether the trial court record here demonstrates that the housekeeping records sought by plaintiff are records of the type required to be produced.

We look first to the management agreement. However, as we have noted, the trial court record contains only portions of both the agreement and the Association's declaration. As we have also noted, the portion of the agreement that is in the trial court record acknowledges that the Association owns certain records maintained by the manager, but it does not specifically describe or designate the nature of those records.

Further, the trial court record makes clear that there is a substantial dispute between the parties as to the nature of the records at issue. While the trial court expressly gave more "weight" to the affidavit presented by the Association than to the affidavit provided by plaintiff, such weighing of the evidence is improper when passing upon a motion for summary judgment. *See Andersen v. Lindenbaum*, 160 P.3d 237, 239 (Colo.2007). It is undisputed that the Association had provided to plaintiff the same type of records for prior years that he was again requesting. This prior review provided plaintiff with personal knowledge of their contents, and his characterization of them creates an issue of material fact that cannot be resolved on summary judgment. *See* C.R.C.P. 56(e) ("affidavits shall be made on personal knowledge"); *USA Leasing, Inc. v. Montelongo*, 25 P.3d 1277 (Colo.App.2001).

Moreover, even assuming that the records at issue show only the identity of the employees who have performed housekeeping services and the time spent by them in doing so, as the Association alleges, given the Association's right to disapprove of the further use of an employee, its requirement to reimburse the manager for the compensation paid to such employees, its requirement to provide guidelines to the manager for the level of housekeeping services to be performed, and the manager's requirement to submit an annual budget to the Association, we cannot say, as a matter of law, that these records either are or are not maintained by the manager in the performance of the Association's privileges or responsibilities. Given the various rights and responsibilities assumed by the Association and the manager in the management agreement, these records may or may not contain information pertinent to the Association's exercise of one or more of those rights and responsibilities.

Hence, it cannot be said, as a matter of law, that these records either are or are not among those that the agreement provides are to be owned by the Association. This is a factual question to be decided only after evidence is received as to the nature of the records requested, the use to which they have been put in the past, and the use to which the Association could reasonably put them in exercising its rights and responsibilities.

If such evidence shows that the records at issue are the type of records that the Association would create, use, receive, or maintain, and rely upon for the performance of its powers and duties under the CCIOA, its declaration, or its other governing documents had it not delegated the performance of such responsibilities to a manager, they may well constitute a part of its "financial and other records" referred to by former section 38–33.3–317.

Accordingly, we conclude that genuine factual issues exist here that could not be resolved on summary judgment. Hence, that judgment must be reversed.

Likewise, because the court's award of attorney fees was based upon its entry of that judgment, that award must also be reversed.

The judgment of the district court, including its award of attorney fees, is reversed, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

Judge ROY and Judge CARPARELLI concur.